(No. 15646.—Decree affirmed.)
R. M. BRITT et al. Appellants, vs. CLARENCE DARNELL et al.
Appellees.

*Opinion filed February 17, 1925.*

1. WILLS—*when presumption of undue influence arises from a confidential relation.* No presumption arises from the existence of a fiduciary relation that a will in favor of the fiduciary was executed as the result of the fiduciary's undue influence unless the person who occupies the confidential relation prepares the will or participates in the preparation and execution of it, in which case the burden is cast upon him to show that the execution of the will was the free and voluntary act of the testator.

2. SAME—*what does not show fiduciary participated in drawing will.* The mere fact that the attorney who drew the will was also attorney for the chief beneficiary, who was one of the executors of the estate of the testatrix's husband and who is shown to have occupied a confidential relation to the testatrix, is not sufficient to show that the beneficiary participated in the drawing of the will, and will not, alone, warrant the submission of the issue of undue influence to the jury.

3. SAME—*what interest will render witness incompetent in contest case.* In a will contest case, interest which will render a witness incompetent must be such an interest that a pecuniary gain or loss will come to the witness as the immediate result of the decree.

4. SAME—*when personal attorney of executor is a competent witness.* The fact that an attorney is the personal general attorney, legal adviser and counsel of the executor and chief beneficiary does not render him an incompetent witness in a contest of the will where he is not an attorney in the suit.

5. SAME—*when certificate of oath of subscribing witnesses does not make prima facie case in will contest—instruction.* To make a *prima facie* case for the proponents in a will contest the certificate of the oath of the subscribing witnesses taken at probate must contain all the points prescribed by section 2 of the Wills act, and where it does not recite that the witnesses "believed" the testatrix of sound mind and memory at the time of the execution of the will but merely that the witnesses so "believe" when their oath was taken it is not sufficient to make a *prima facie* case, and it is error to so instruct the jury, but the error is harmless where the testimony of the witnesses themselves is taken.

315—25

6. Same—*subsequent acquisition of interest does not render at-testing witness incompetent.* The provision requiring two credible witnesses to the execution of a will refers to competency at the time of execution and not at the probate of the will, and if a witness is competent at the time of the execution of the will no subsequent incompetency or acquisition of interest will prevent the probate of the will by his testimony, and if the witness was incompetent at the time of the execution of the will the subsequent removal of the incompetency will not allow the probate of the will by such witness' testimony.

7. Same—*subscribing witnesses must testify that they believed testator was of sound mind and memory.* It is not necessary that the subscribing witnesses shall make their declaration on oath in the words of the statute but it is necessary that they declare what the statute says must be declared, a part of which is their belief, at the time of attesting the will, that the testator was of sound mind and memory.

8. Same—*evidentiary value of certificate of oath of subscribing witnesses.* In a will contest the certificate of the oath of the subscribing witnesses has no evidentiary force of itself and it is admissible in evidence only because of the statute, which says that it shall have such weight as the jury think it may be entitled to, and it cannot be regarded as proving anything which the statute does not authorize to be included in it.

9. Same—*general rule as to burden of proof in will contest.* In a will contest case the burden is always on the proponents to prove the valid execution of the will as required by the statute, but where they have made a *prima facie* case by the certificate of the oaths of the subscribing witnesses or by the testimony of the witnesses, the contestants are required to prove the allegations of their bill that the testator was mentally incompetent, as the presumption is in favor of sanity.

10. Same—*when non-expert witnesses may give opinions as to mental capacity.* Witnesses who are not experts are permitted to testify upon the question of mental capacity only where it appears that they have had sufficient acquaintance with the testator or testatrix and sufficient opportunity to judge as to his or her mental capacity, and until they have related facts and circumstances as a reasonable ground for their belief their opinions are of no value and should be excluded from the consideration of the jury.

11. Same—*court must decide whether non-expert may express an opinion of mental capacity—instruction.* Whether the evidence shows that a non-expert witness has sufficient knowledge or acquaintance with the testator or testatrix to be competent to express an opinion as to his mental capacity is a question to be

decided by the court, and it is error to instruct the jury that they "are not bound to accept the conclusion or the opinion of such witness or witnesses" unless they believe the witnesses were in possession of facts and circumstances to warrant giving such opinion.

12. SAME—*what must be considered by jury in weighing opinion of non-expert witness.* Opinions of non-expert witnesses in a will contest case must be received and valued by the jury according to the intelligence of the witness, his capacity to form an opinion, his acquaintance with the testator or testatrix, his means of observation and his veracity, and the jury are not required to give opinions of different witnesses the same weight.

13. SAME—*when evidence of source of testatrix's title is properly refused.* In a will contest the will of the testatrix's deceased husband and the records of the probate and partition of his estate are not admissible in evidence to show the source of her title, where the offered evidence has no tendency to prove that the testatrix did not appreciate the amount and value of her property when she executed her will.

14. SAME—*what testimony is admissible on question of mental capacity.* In a will contest case, where witnesses for the contestant have testified that the testatrix told them she had a mortgage on a certain place, the contestant may prove by other competent witnesses the fact that the testatrix had no such mortgage; but the error in excluding such proof will not cause a reversal where the fact is not seriously disputed, is merely cumulative and could not have had any effect on the verdict.

APPEAL from the Circuit Court of Tazewell county; the Hon. C. V. MILES, Judge, presiding.

LIVINGSTON & WHITMORE, WILLIAM C. RADLIFF, and PRETTYMAN, VELDE & PRETTYMAN, for appellants.

THOMAS A. KENNEDY, and JESSE BLACK, JR., for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Mary H. Burt, who lived in the village of Armington, in Tazewell county, executed her will on March 10, 1916, and died on June 24, 1921, at the age of eighty-seven years. She was the owner of more than one thousand acres of

land in the neighborhood of Armington and of other real estate and personal property, all of the value of $329,676.19, as shown by the inventory of her estate, all of which, after the payment of her debts and funeral expenses, she devised to Clarence Darnell, subject to the payment of twenty-five specific legacies, amounting to $23,700, twenty-three of which were to relatives and friends, one to the Christian church of Armington and one to the trustees of the cemetery of that church. She had no children, and her heirs were her brother, R. M. Britt, and twenty-three descendants of her deceased brothers and sisters. Her brother, a nephew and four nieces filed a bill to contest the will in the circuit court of Tazewell county on the ground of the mental incapacity of the testatrix and of undue influence exercised by Darnell and Sarah A. Glodfelter. The issue whether the writing produced was the last will and testament of the deceased was submitted to a jury, on motion of the proponents the question of undue influence was withdrawn from the consideration of the jury, a verdict was returned in favor of the will and a decree was entered dismissing the bill, from which the complainants appealed.

John H. Burt, the husband of the testatrix, died in 1909, leaving a will, which she renounced, and a large estate, from which she received a large amount of property, both real and personal. It does not appear from the evidence that she ever had any other property except eighty acres of land given to her by her father upon her marriage and from $1500 to $2000 which she received from her father's estate. Clarence Darnell, who was a grand-nephew, and John C. Britt, who was a nephew of Mrs. Burt, the latter being one of the contestants in this suit, were executors of the will of John H. Burt, and on April 12, 1910, Mrs. Burt executed a written instrument whereby she empowered Darnell, as her attorney, "to sign all legal papers, of any and all description," for her. She intrusted to him, after her husband's death, the active control and management of her

affairs and property. She had taken him from his mother, her niece, when he was a baby, into her own home and she and her husband had reared him as their own child. Mrs. Burt in devising all her property to him referred to him in her will as her foster-son, and she was in the habit of calling him her son and treated him as such. Sarah A. Glodfelter, to whom the will required Darnell to pay $4000, was not related to the testatrix, but for four years before the execution of the will had been her companion, living in her home, in constant attendance upon her, caring for all her wants, driving her car when she rode, constantly with her at home and abroad. Their relations were very close and continued to Mrs. Burt's death. These are the two beneficiaries by reason of whose improper restraint and undue influence the bill charges the testatrix executed her will, and it is insisted that the court erred in withdrawing the question of undue influence from the consideration of the jury.

After the death of John H. Burt, Judge W. R. Curran was the attorney for the executors of his will, and in a few weeks after her husband's death Mrs. Burt executed a will which was prepared by Judge Curran. She afterwards executed other wills. In the forenoon of the day the present will was executed Mrs. Burt came with Miss Glodfelter to the office of Curran & Dempsey, in Pekin, where the will was prepared by Judge Curran. Miss Glodfelter remained in the outer office while Mrs. Burt went into the inner office with Judge Curran. While she was there Ralph Dempsey, Judge Curran's partner, went into Judge Curran's room and found Mrs. Burt there in consultation with Judge Curran. Dempsey was born and grew up in Armington and had known Mrs. Burt well all his life and their relations were friendly. He learned, during the forenoon, of the object of the visit and in a general way of the purport of her will. After her conference with Judge Curran Mrs. Burt and Miss Glodfelter left the offices and Judge Curran dic-

tated the will. In the afternoon they returned, and Dempsey and Robert A. Guy, who was a deputy county clerk, were called into the private office of Judge Curran to witness the execution of the will. Guy also had lived at Armington and had known Mrs. Burt all his life and had once before witnessed the execution of a will by her. The will was then executed by Mrs. Burt and witnessed by Dempsey and Guy in the manner required by the statute. There was no evidence whatever of any restraint or undue influence operating upon Mrs. Burt to induce her to execute this will. Her relations to Darnell were such that no doubt he might have influenced her, but there is an entire lack of evidence of any effort to do so. From their relation it would naturally be expected that he would benefit largely by her will. Had he been her only son he would have received her whole estate without any will, and her words and actions indicated that she regarded him as her son. Under these circumstances the will cannot be regarded as unreasonable or unnatural.

Miss Glodfelter was not present when the will was being discussed or was in preparation or was executed. She accompanied Mrs. Burt in the ordinary course of her duties, as she was in the habit of doing whenever Mrs. Burt went from home. There is no evidence that she knew anything about the provision made for her in the will, that she knew of Mrs. Burt's intention to make her will, or that the subject was ever mentioned between them. In consideration of her faithful service and close relationship the provision made for her cannot be regarded as excessive.

The existence of a confidential relation is not a legal obstacle to a testator's making a will in favor of the person in whom confidence is reposed. No presumption arises from the existence of a fiduciary relation that a will in favor of the fiduciary was executed as the result of the fiduciary's undue influence. A testator may exercise his own will in favor of a fiduciary as well as in favor of

other persons or objects. Where a person who occupies
a confidential relation to the testator prepares the will or
participates in the preparation and execution of it, a pre-
sumption of undue influence arises which casts upon him
the burden of showing that the execution of the will was
the free and voluntary act of the testator and was not pro-
duced by the efforts of the person holding the confidential
relation. Nothing of the kind appears in the evidence here.
It is not shown that Darnell had anything to do with the
execution of the will.

Judge Curran was the attorney for the estate of John
H. Burt, and it is argued that his employment by Mrs.
Burt, as her attorney also, to draw her will was induced
by Darnell, and such employment would raise the presump-
tion of undue influence operating on Mrs. Burt at the time
of the execution of her will. There is no basis for such a
far-fetched conclusion. It gives the imagination too much
range to infer that an attorney drawing a will for one cli-
ent in favor of another client has exercised an undue in-
fluence over the testator in favor of the other client. Such
a thing might be possible, but it is so far outside the range
of ordinary experience that no presumption of the kind can
arise. In connection with this argument it is to be noted
that Judge Curran, as attorney for the executors of the
will of John H. Burt, represented J. C. Britt, one of the
executors, as well as Darnell, the other. Another far-
fetched inference is that from the facts that the estate of
John H. Burt was not finally settled until after the execu-
tion of the will, and that the final payment of more than
$17,000 was made to Mrs. Burt on March 30, twenty days
after the execution of the will, therefore the payment was
delayed until that time for the purpose of influencing her
to make the will. Aside from the inherent fallacy of such
argument are the facts that the final account showing this
balance due Mrs. Burt was filed in the county court a month
before the will was executed, and that J. C. Britt, who

was one of the executors, was one of Mrs. Burt's heirs and was disinherited by the will. There was no evidence of undue influence which justified the submission of that issue to the jury.

After the examination and cross-examination of Ralph Dempsey, counsel for the appellants moved to strike out all his testimony for the reason that his examination showed that he had such a direct interest in the outcome of the litigation as to make him an incompetent witness against the heirs who were contesting the will. His testimony showed that he was the attorney of Clarence Darnell, as executor of Mrs. Burt's will, in the probate proceedings in the Tazewell county court; that he was not his attorney in this suit but was his personal general attorney, legal adviser and counsel; that he had taken considerable interest in this suit, had interviewed witnesses in company with the appellees' attorney, introducing witnesses to him and sometimes seeing certain witnesses Darnell wanted interviewed when Darnell's attorney in the case was unable to do so, and reported to the attorney. He had advised Darnell on matters connected with the case and suggested counsel to be retained. At the trial he had conferred with counsel in regard to the dismissal of a prospective juror about whom he expressed his judgment, and it is argued that he had a pecuniary interest in the case which rendered him incompetent as a witness. The interest which will render a witness incompetent must be such an interest in the judgment or decree that a pecuniary gain or loss will come to him directly as the immediate result of the judgment or decree. (*Stephens* v. *Hoffman,* 263 Ill. 197; *Bellman* v. *Epstein,* 279 id. 34.) The evidence showed nothing of the kind. It is possible if the will should be set aside another than Darnell might be appointed administrator and might employ another attorney, but that is too remote and indirect an interest to render the attorney for the executor incompetent to testify in his behalf. The fact that his client, as a result of the

litigation, may lose some property and be less able to pay him fees or have less occasion to employ him does not give him such an interest in the litigation as to make him incompetent to testify.

No motion to direct the verdict on the issue of mental incapacity of the testatrix was made by either party and it is not contended that this issue was not properly submitted to the jury, though counsel for each side have made a detailed analysis of the evidence and claim that it preponderates in favor of the side which they respectively represent. The evidence is conflicting, not so much with reference to the facts testified to, for there is little contradiction in the testimony, as with reference to the conclusions to be drawn from the opinions expressed. The appellees had the greater number of witnesses, including farmers, tenants, neighbors, friends, bankers, a minister, a lawyer, a grain dealer, laborers, contractors, carpenters, doctors and nurses, who testified to their acquaintance with the testatrix, their opportunities of observing her during her lifetime, after her husband's death, and to their opinion that she was of sound mind and memory. On the other hand, the appellants claim that the witnesses whom they produced, though fewer than half in number, were better qualified than those produced by the appellees to form an opinion, and that their testimony is of greater weight because of their better and fuller opportunities for observation of the testatrix and knowledge of her words and actions. There can be no question but that the evidence amply sustains the verdict, and the decree must be affirmed unless the record shows substantial error occurring on the trial.

It is contended that the court erred in giving instructions 8, 9 and 10 asked by the appellees, as follows:

8. "The court instructs the jury that the paper in evidence purporting to be the last will and testament of Mary H. Burt, together with the affidavit of the two subscribing witnesses in evidence, make a *prima facie* case in favor of

the validity of the said paper as the last will and testament
of Mary H. Burt, deceased.

9. "The court instructs the jury that if you believe from
the evidence that a *prima facie* case as explained in these
instructions has been made in favor of the validity of the
will, then the contestants will fail in their proofs unless
they establish by a preponderance or greater weight of all
the evidence in this case that testatrix was of unsound mind
at the time of the execution of said purported will.

10. "The court instructs the jury that it is charged in
contestants' bill, that at the time of the execution of the
instrument purporting to be the last will and testament of
Mary H. Burt, she was of unsound mind and memory and
by reason thereof unable to make a valid will. You are
further instructed in this case that if the proponents have
made a *prima facie* case as explained in these instructions,
then for the contestants to maintain the issues successfully,
the contestants must establish mental incapacity by a pre-
ponderance or greater weight of all the evidence, and unless
you believe that the contestants have proven the averments
of their bill as to mental incapacity by a preponderance of
all the evidence in the case, then you should find by your
verdict that the instrument in question is the last will and
testament of Mary H. Burt."

These instructions informed the jury that the affida-
vit of the subscribing witnesses in connection with the will
makes a *prima facie* case in favor of the validity of the
will, and that the burden of proof was on the appellants
to establish, by a preponderance of the evidence, that the
testatrix was of unsound mind at the time of the execution
of the will. By section 7 of the act in regard to wills it is
provided that in the trials of all contests of the validity of
wills "the oath of the subscribing witnesses taken, reduced
to writing and filed in court at the time of the first pro-
bate, properly certified to, shall be admitted as evidence and
have such weight as the jury shall think it may deserve."

When this certificate covering the points prescribed by section 2 has been introduced, the competency of a testator and the execution of a will have been *prima facie* established, as has been many times held. (*Holloway* v. *Galloway*, 51 Ill. 159; *Purdy* v. *Hall*, 134 id. 298; *Harp* v. *Parr*, 168 id. 459; *Waters* v. *Waters*, 222 id. 26; *Grace* v. *Grace*, 270 id. 558; *Walker* v. *Struthers*, 273 id. 387.) It is true that the jury are required to give this certificate only such weight as they shall think it may deserve. The express words of the statute so provide. (*Rigg* v. *Wilton*, 13 Ill. 15.) If the two credible witnesses required by section 2, however, make the declaration on oath required by that section, the section itself declares that this shall be sufficient proof of the execution of the will to admit it to record. In the absence of contradictory evidence the jury could not disregard the oath of the witnesses, and the introduction of the will and the certificate would therefore make a *prima facie* case. It was error, however, to give the instruction, for the reason that the certificate of the oath of the witnesses did not cover the points described by section 2, one of which is that the witnesses shall declare that they believed the testator or testatrix to be of sound mind and memory at the time of signing or acknowledging the will. The oath of the subscribing witnesses, as shown by the certificate, was not that they believed, but "that they believe that the said testatrix, at the time of executing the same as aforesaid, was of full age, of sound mind and memory and under no constraint," thus making the affidavit refer to their belief on the day the oath was taken, August 1, 1921, and not to their belief at the time of the execution of the will, March 10, 1916. It is the latter date to which the statute refers,—the belief of the witnesses at the time of the execution of the will, and not to their belief at a subsequent date. (*In re Will of Ingalls*, 148 Ill. 287; *Waugh* v. *Moan*, 200 id. 298.) In *Dickie* v. *Carter*, 42 Ill. 376, it is said: "It is conceded by plaintiffs in error, and

such is the statute, that to entitle a will to probate four things must concur: It must be in writing and signed by the testator or testatrix, or in his or her presence by someone under his or her direction; it must be attested by two or more credible witnesses; two witnesses must prove that they saw the testator or testatrix sign the will in their presence *or* that he or she acknowledged the same to be his or her act and deed; they must swear that they *believed* the testator or testatrix to be of sound mind and memory at the time of signing and acknowledging the same." In *Canatsey* v. *Canatsey,* 130 Ill. 397, these words are quoted, with the words "or believe" inserted in parentheses after "believed." While it is thus apparent that the writer of the opinion took notice of the past tense of the verb, it is obvious that there was no construction of the statute in that case, for the oath of the witnesses as to their belief in the testator's soundness of mind is not given, and the quotation was immediately followed by the statement that it was not necessary to say anything as to the fourth requisite, as it was not claimed that the testator was not of sound mind and memory.

In the cases in which the court has stated that the witnesses must swear that they believe or believed that the testator was of sound mind and memory at the time of signing or acknowledging the will there was no question as to whether the time of such belief was the time of attesting the will or the time of testifying, and the language of the court had no reference to any such question. The statute requires the will to be attested by two credible witnesses. This has always been held to mean competent witnesses, and the competency refers to the time of the execution of the will and not to the time of its probate. The acquisition of an interest in the estate subsequent to the execution of the will does not render a competent witness incompetent to testify to its execution, and neither does the conviction of a witness of a felony. If a witness is

competent at the time of the execution of the will no subsequent incompetency will prevent the probate of the will by his testimony, and if at the time of execution he is incompetent the subsequent removal of his incompetency will not allow the probate of the will by his testimony. (*In re Will of Delavergne,* 259 Ill. 589; *In re Will of Noble,* 124 id. 266; *Fisher* v. *Spence,* 150 id. 253; *Slingloff* v. *Bruner,* 174 id. 561; *Johnson* v. *Johnson,* 187 id. 86.) It is not necessary that the witnesses shall make their declaration on oath in the words of the statute but it is necessary that they shall declare the thing which the statute says must be declared, a part of which is their belief, at the time of attesting the will, that the testator was of sound mind and memory. (*Hill* v. *Kehr,* 228 Ill. 204; *Bice* v. *Hall,* 120 id. 597; *Yoe* v. *McCord,* 74 id. 33.) The oath of the witnesses was not in compliance with the statute, and for that reason was not sufficient to entitle the will to probate had the probate been resisted. For the same reason the certificate of the oath, as a matter of law, did not make a *prima facie* case in favor of the validity of the will, as stated in the eighth instruction. Of itself the certificate has no evidentiary force, and it is admissible in evidence only because of the statute, which does not say that it shall be evidence of anything, but only that it shall have such weight as the jury think it may be entitled to. It can not be regarded as proving anything which the statute does not authorize to be included in it.

For the reason that the affidavit failed to show the belief of the witnesses at the time of the attestation that the testatrix was of sound mind and memory, the will, and the certificate of the oath of the subscribing witnesses, failed to make a *prima facie* case in favor of the validity of the will.

The ninth and tenth instructions, based on the eighth, told the jury that if the *prima facie* case had been made, the burden was upon the contestants of the will to estab-

lish, by the preponderance or greater weight of all the evidence in the case, that the testatrix was of unsound mind at the time of the execution of the will, and unless they have done so the jury should find by their verdict that the instrument in question is the last will and testament of Mary H. Burt. Out of the double meaning of the term "burden of proof" and the various forms in which the rule has been stated has come some indefiniteness of understanding as to the rule in regard to the burden of proof of testamentary capacity in will cases. It has been held that the burden of proof of testamentary capacity is on the proponent of the will; that it never changes or shifts, during the progress of the trial, from one party to the other but remains upon the proponent to the end, and unless, upon a consideration of all the evidence in the case, he has carried this burden, he fails. It has also been held that where the proponent has made a *prima facie* case by the certificate of the oaths of the witnesses or by testimony of the witnesses, the burden of proof is then on the contestants to prove the allegations of their bill, by a preponderance, of all the evidence, that the testator was mentally incompetent. In *Donovan* v. *St. Joseph's Home,* 295 Ill. 125, the subject received careful consideration, and in an effort to clarify the question a number of decisions in will cases in which it was involved were brought together, beginning with *Rigg* v. *Wilton, supra,* in which the question first came before the court, and in which it was decided that on the trial of an issue under the statute the burden of proof is on the party affirming the execution and validity of the will; that the issue is to be submitted to the jury as a new and original question, without regard to the fact that the instrument has been admitted to probate, and while the certificate of the oaths of the witnesses at the time of probate may be offered in evidence by either party, it is to receive such weight, only, as the jury may think it deserves in connection with the other evidence in the case. It is said this

rule has never been changed but has been repeated in many cases, which are cited, and it is further held that the burden of proof thus imposed on the proponent of the will never shifts from one party to the other. (*Slingloff* v. *Bruner, supra; Egbers* v. *Egbers,* 177 Ill. 82; *Michael* v. *Marshall,* 201 id. 70.) The opinion then states the facts necessary to be proved to establish *prima facie* the validity of the will and the duty of the proponent to offer in chief not only the evidence making a *prima facie* case but all other evidence relating to the issue of testamentary capacity, and after stating that it would be absurd to say that the burden of proof shifts and passes to the defendants in the midst of a proponent's evidence in chief, continues: "In the sense, however, that in considering the evidence the proponent is entitled to the presumption of testamentary capacity, it has frequently been said by the court that the proponent is entitled to the benefit of such presumption, and the evidence for the contestant must be sufficient to neutralize and overcome the evidence offered by the proponent and the added presumption." After discussing this proposition and citing authorities in support of it, it is said: "The rule declared is, if the *prima facie* case is made, that in the final decision upon the whole case the contestant will fail unless the preponderance of the whole evidence as to testamentary capacity is on his side. An instruction containing a statement of the law in harmony with these decisions would be proper." In a great many cases the rule has been announced that it is incumbent on the proponent of a will to make out a *prima facie* case, in the first instance, by proper proof of the due execution of the will by the testator and his mental capacity; that the burden of proof is then on the contestants to prove the allegations of their bill, by a preponderance of all the evidence, that the testator was mentally incompetent. The law throws the weight of the legal presumption in favor of sanity into the scale in favor of the proponent, from which the cases

hold that it necessarily results that upon the whole case the burden of proof rests upon the contestants to prove the insanity of the testator. (*Carpenter* v. *Calvert*, 83 Ill. 62; *Wilbur* v. *Wilbur*, 129 id. 392; *Pendlay* v. *Eaton*, 130 id. 69; *Campbell* v. *Campbell*, 138 id. 612; *Craig* v. *Southard*, 148 id. 37; *Taylor* v. *Pegram*, 151 id. 106; *Taylor* v. *Cox*, 153 id. 220; *Craig* v. *Southard*, 162 id. 209; *Hesterberg* v. *Clark*, 166 id. 241; *Egbers* v. *Egbers, supra; Entwistle* v. *Meikle*, 180 Ill. 9; *Baker* v. *Baker*, 202 id. 595; *Todd* v. *Todd*, 221 id. 410; *Walker* v. *Struthers, supra; Chaney* v. *Baker*, 304 Ill. 362; *Williams* v. *Ragland*, 307 id. 386.) The ninth and tenth instructions stated the law in harmony with these decisions. They were based on the eighth instruction, which erroneously stated that the will, together with the affidavit of the witnesses, made a *prima facie* case in favor of the validity of the will. But this error was not harmful to the appellees, because the testimony of the witnesses themselves was taken, and there can be no question that a *prima facie* case was made by the appellees in favor of the validity of the will.

It is contended that the following instruction was erroneous:

18. "The court instructs you as a matter of law, that if any witness in this case has testified to the soundness or unsoundness of mind of the said Mary H. Burt, without testifying to such facts or circumstances which, in your judgment, would warrant such witness in concluding that the mind of the said Mary H. Burt was sound or unsound, then you are not bound to accept the conclusion or the opinion of such witness or witnesses, and you should not do so, if, from all of the evidence, you believe that such witness is mistaken or was not in possession of facts and circumstances to warrant the rendering of such opinion."

Witnesses who are not experts are permitted to testify upon the question of mental capacity when it appears that they have had sufficient acquaintance with the person

whose competency is in question and sufficient opportunity to judge of his mental capacity, and not otherwise. Until they have related facts and circumstances as the basis of their judgment which afford reasonable ground for a belief in the soundness or unsoundness of mind of the person whose mental capacity is questioned their opinions are of no value and should be excluded from the consideration of the jury. (*Roe* v. *Taylor,* 45 Ill. 485; *Grand Lodge I. O. M. A.* v. *Wieting,* 168 id. 408; *Snell* v. *Weldon,* 239 id. 279; *Graham* v. *Deuterman,* 244 id. 124; *Brainard* v. *Brainard,* 259 id. 613; *Walker* v. *Struthers, supra; Lloyd* v. *Rush,* 273 Ill. 489; *Hettick* v. *Searcy,* 278 id. 116; *Baddeley* v. *Watkins,* 293 id. 394.) It is held by these cases that whether the evidence shows that a witness has sufficient knowledge of another to be competent to express an opinion as to his mental capacity is a question to be decided by the court, and that such opinion, when permitted to be given to the jury, is to be received by them and valued according to the intelligence of the witness, his capacity to form an opinion, his acquaintance with the person whose mental capacity is in question, his means of observation and his veracity. The opinions expressed by the witnesses as to the mental capacity of the testatrix had been admitted in evidence together with the testimony as to the facts on which they were based, and the jury were bound to receive and consider them and give each of them such weight as in their judgment it was entitled to, in view of the circumstances appearing in evidence in regard to it. The instruction is rather obscure, and it is difficult to understand exactly what idea it was intended to convey, but the purpose seems to have been to warn the jury not to be controlled in their verdict by opinions expressed by witnesses who in the judgment of the jury had not shown themselves acquainted with facts and circumstances sufficient to justify their opinions. The admissibility of the opinion of any witness in evidence is a question of law to be deter-

315—26

mined by the court, and such opinions of witnesses as are admitted by the court must be received, considered and weighed by the jury in connection with the facts given by the witnesses as the basis of such opinions. The instruction does not state that the jury are not bound to consider and weigh the conclusions or opinions of the witnesses in connection with the facts to which they testified on which such opinions were based. Such opinions must be received and valued by the jury according to the intelligence of the witness, his capacity to form an opinion, his acquaintance with the person whose mental capacity is in question, his means of observation, and his veracity. The instruction, upon a careful analysis, is not inconsistent with this duty of the jury but is intended rather as a caution against the acceptance of the opinions of witnesses without sufficient consideration of the facts and circumstances on which they were based and the weighing and valuing of them according to the opportunity and means of observation of each witness, his intelligence and capacity to form an opinion, and his acquaintance with the testatrix, as well as his veracity. The instruction ought not to have been given, for it is capable of the construction which the appellants' counsel have placed on it, that it submitted to the jury the legal question whether the witnesses had, respectively, stated such facts as justified the formation and expression of an opinion as to the mental capacity of the testatrix, and therefore authorized the jury to determine the competency of the evidence instead of its weight. It was proper to call the attention of the jury to the propriety of their taking into consideration, in valuing the opinions of the witnesses, the extent of their acquaintance with and observation of her and of their means of forming an opinion as to her mental condition. There were many witnesses on that question, some of whom had abundant opportunity and means of forming an opinion and others whose opportunities were much more restricted. All the opinions admitted to be ex-

pressed to the jury were competent and it was the jury's
duty to consider them, but they were not required to give
all the same weight. The instruction was erroneous, but
in view of the whole record, in our opinion it should not
cause a reversal of the judgment.

The appellants offered in evidence, and the court re-
fused to admit, the will of John H. Burt, the husband of
the testatrix, the inventory, and other records in connection
with his estate, and the records of a suit for the partition
of his lands. The appellants contend that they were ad-
missible to show the source of the title of the testatrix to
her property, to show her knowledge of her own property
interests and those of Darnell, and to establish the fiduciary
relation of Darnell to her. The source of her title was im-
material. (*Turnbull* v. *Butterfield,* 304 Ill. 454; *Gregory*
v. *Richey,* 307 id. 219.) The evidence offered had a tend-
ency to show the extent of her property and of Darnell's
at the time of the proceedings in court. The appellants'
contention was that Mrs. Burt did not appreciate the amount
and value of her property when she executed her will. The
offered evidence had no tendency to prove it. There was
no need to prove any more fully Darnell's confidential re-
lation, which was established, but the proof failed to show
it influenced the making of the will.

Two witnesses for the appellants testified that Mrs. Burt
told them that she had a mortgage on the home of Arthur
Albright, in Armington, and that if it were not for his
wife she would take his home away from him because his
horses trespassed on her property. The appellants say that
this was a vagary of her mind, and offered to prove by
Albright that she never had a mortgage on his home and
that he never gave a mortgage on it to anyone. Objec-
tion was made to his competency and sustained. His wife
was one of Mrs. Burt's heirs and was a party to the suit.
She died before the trial, leaving her husband and two chil-
dren surviving, who were all made parties. Upon his wife's

death he became entitled to one-third of her interest in the personal estate and dower in her interest in the real estate of the testatrix, and was therefore interested and incompetent. Another witness was asked in regard to the same matter,—if he knew whether or not Mrs. Burt had a mortgage on the Albright home,—but an objection was sustained to the question. It was proper for the appellants to prove the fact and the court should have permitted this preliminary question to be asked, but an answer favorable to the appellants would have been cumulative, only, there was no serious dispute as to the fact, and the error could not have had any effect on the verdict.

The decree will be affirmed.

*Decree affirmed.*

---

(No. 15360.—Reversed and remanded.)
BOLESLAW LIDIKEVICZ, Appellee, *vs.* WOJCIECH KOPALA *et al.* Appellants.

*Opinion filed February 17, 1925.*

1. SPECIFIC PERFORMANCE—*when contract may be reformed and enforced at suit of purchaser.* Where a contract for a conveyance requires the purchaser to take the property subject to certain incumbrances but the scrivener by mistake inserts the entire purchase price as the consideration required to be paid by the purchaser before receiving a deed the contract may be reformed, and the purchaser will be entitled to his deed where he tenders cash for the price above the incumbrances and shows that he is ready, able and willing to perform his part of the contract, but the vendor is entitled to be reimbursed any sums paid on principal or interest on the incumbrances after making the contract.

2. SAME—*when decree should provide for reimbursement before compelling vendor to make deed—accounting.* In a suit by a purchaser for specific performance of a contract for a conveyance the decree should not require the vendor to make a deed without providing that he be reimbursed for necessary and reasonable repairs and improvements made on the premises after the contract was signed, and where the contract provides that the purchaser shall pay special assessments falling due after a certain year, that