FLOSSIE GOFF *et al.* Plaintiffs in Error, *vs.* SUSAN GERHART
*et al.* Defendants in Error.

*Opinion filed April 24, 1925.*

1. WILLS—*confidential relation does not necessarily create presumption of undue influence.* A confidential relation existing between a testator and a beneficiary does not necessarily raise or create a presumption of undue influence, but such relation, to create the presumption, must be used for the purpose of procuring the making of the will.

2. SAME—*what undue influence will invalidate a will.* Undue influence that will invalidate a will must be directly connected with the instrument, must be operative when the will is made, must be directed toward procuring the will in favor of certain parties, and must be such as to destroy the freedom of the testator's action.

3. SAME—*when instruction as to undue influence is properly refused.* In a will contest an instruction on the question of undue influence is properly refused where it assumes certain facts which are not admitted and which it is the province of the jury to determine.

4. SAME—*what instruction may be refused as inapplicable in a will contest.* In a will contest on the grounds of mental incapacity and undue influence, an instruction stating, in effect, that a higher degree of mental capacity is required to make a will where an estate is large and the disposition complicated than to make a simple will where there are few details to comprehend is properly refused as not being applicable to the case, where there are no complicated details in the will or complicated items of property, although the estate is fairly large.

WRIT OF ERROR to the Circuit Court of Lawrence county; the Hon. JULIUS C. KERN, Judge, presiding.

GEE & GEE, and McGAUGHEY, TOHILL & McGAUGHEY, for plaintiffs in error.

PHILIP W. BARNES, SHAW & HUFFMAN, SUMNER & LEWIS, and KRAMER, KRAMER & CAMPBELL, for defendants in error.

316—33

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiffs in error filed their bill in the circuit court of Lawrence county to set aside the will of Philip Moore, deceased, upon the ground of want of testamentary capacity on his part and undue influence on the part of Ethel Gerhart, his niece, and Susan Gerhart, her mother, a sister of the testator. The will was executed on the 27th day of December, 1919, and after providing for the payment of debts and funeral expenses and the erection of a monument at the grave of the testator at a cost of $500, it devised and bequeathed all of the testator's property, of every kind and character, to his sisters, Susan Gerhart and Elizabeth Burrell, and to his niece, Ethel Gerhart, share and share alike. It nominated J. E. Lemmons executor and was witnessed by James Smith, Bert Mushrush and Otto H. Barnes. The bill to contest the will was heard before the court and a jury. The latter returned a verdict that the will was the will of the testator, and a decree was entered on that verdict dismissing the bill. Plaintiffs in error bring the cause here, contending that the verdict of the jury was not sustained by the manifest weight of the evidence, and that the court erred in instructing the jury and in the admission of evidence.

Concerning the last assignment of error, it is sufficient to say that plaintiffs in error present no argument thereon and do not point out wherein the court erred in the admission of evidence, and this assignment of error will be held to have been waived.

On the question of testamentary capacity and undue influence, the proponents of the will offered the testimony of sixty-one witnesses and the contestants twelve. It is unnecessary and would serve no good purpose to discuss this testimony in detail. The undisputed evidence in the record shows that the testator was a farmer, living in Lawrence county. He was born in that county in 1854 and died on April 20, 1922. He lived in the township in which he was

born until the year 1904, when he sold the farm which he had for some years owned there and purchased another near Bridgeport, in that county, on which he thereafter made his residence until June, 1920, when he moved to the home of his sister Susan Gerhart, in the township in which he was born, and lived with her until his death. He at one time had been married. No children were born of this marriage and he and his wife were divorced many years before his death. He left surviving him as his heirs-at-law, Susan Gerhart, his sister, seventy-two years of age, Elizabeth Burrell, a sister, seventy-five years of age, and plaintiffs in error, who are the children of a deceased brother, John Moore, who died about 1908. The testator left an estate consisting of approximately $29,000 in cash; notes, bonds and mortgages of about $36,000; and real estate and oil royalties amounting to about $22,000. In 1907, his housekeeper having died, the defendant in error Ethel Gerhart, then of the age of about twenty years, became his housekeeper. She was his niece. She continued as his housekeeper to the date of his death,—a period of about fifteen years. The record shows that she received no salary and had no money except from the occasional sale of butter and eggs from the farm. The evidence shows also that she did the cooking and laundering, tended to the chickens, at times fed and cared for the livestock, and did the milking. For a number of years before the testator's death he was afflicted with neuralgia in his face, which was at times very painful. On August 26, 1919, he suffered a stroke of paralysis, caused by cerebral hemorrhage. He was unconscious during that day, and for a period of twenty-three days thereafter was not entirely rational. Thereafter, until the day of his death, he walked about but little and spent the greater portion of his time in a wheel-chair. Of the twelve witnesses offered by the contestants, who testified that in their opinion the testator was not of sound mind and memory, one was a deputy assessor, who testified that the tes-

tator did not remember all of his cash, notes and bonds when he called on him for his statement of property. Also included were several witnesses who testified to delusions which the testator had after his stroke of paralysis, in August, 1919. Most of this testimony, however, related to a short time succeeding the stroke of paralysis, when it is conceded that his mind was not normal. Eight doctors were called to testify concerning his mental condition, some as to his condition before and some as to before and after he suffered the stroke of paralysis. All of these doctors testified to having treated the testator at one time or another. Six of them testified that aside from the few weeks immediately following the stroke of paralysis he was of sound mind and memory, and their testimony tends to prove that he was capable of executing a will and transacting other business. Two of them testified that they considered he was not of sound mind. Of the contestants' witnesses, five were relatives who were not remembered in the will. Of the sixty-one witnesses offered on behalf of the proponents, three were bankers, one a deputy sheriff, one an attorney at law and one an ex-county judge, twenty had known the testator the greater portion of his lifetime and most of the witnesses testified to business transactions with him. We are satisfied that the jury were justified in concluding from the testimony in the record that the testator was of sound and disposing mind and memory.

It is urged that the record shows that a confidential relation existed between Ethel Gerhart and the testator. It is also claimed that she, with Lemmons, who was nominated as executor, managed the testator's affairs and business. We are not convinced that the evidence so shows. It does show that Ethel at times made purchases for the house with his funds, that she consulted with him with reference to the sale of property, and that he consulted Lemmons with reference to the making of loans. This evidence does not show that the testator did not exercise his own

judgment in the business transactions carried on by him. It does show that his niece, who had been in his home for a number of years and had given evidence of her interest in him by her work as his housekeeper and nurse and in caring for the livestock on the place, was consulted by him in his transactions and that he had a very kindly feeling for her. This is but natural in view of the services she had continuously rendered him and is not evidence of mental incapacity on his part or undue influence on her part. A confidential relation existing between a testator and a beneficiary does not necessarily raise or create a presumption of undue influence. That relation, to create such a presumption, must be used for the purpose of procuring the making of the will. *Gregory* v. *Richey,* 307 Ill. 219.

It is contended that the evidence shows that Ethel Gerhart procured the making of the will. We cannot agree that the evidence so shows. The only evidence of any activity upon her part as to the making of the will is that she called the witness Smith by phone. The record shows that she was not in the room at the time the will was made but was occupied in another part of the house; that the will was made in the presence of the scrivener, Otto H. Barnes, the attorney, Philip W. Barnes, and the witnesses to the will. The will was drawn according to the testator's directions, was read over to him, and it was stated by him that it was as he desired it. Undue influence that will void a will must be directly connected with the instrument and must be operative when the will is made. It must be directed toward procuring the will in favor of certain parties and be such as to destroy the freedom of the testator's will and purpose. *Gregory* v. *Richey, supra,* and cases there cited.

Plaintiffs in error complain of the refusal by the court of the second and third instructions offered by them. The second refused instruction, after defining undue influence, told the jury that in determining whether or not undue

influence had been used they should take into account the confidential relations existing between the testator and Ethel Gerhart; her opportunity to exercise undue influence over the testator; the fact that the will was made without knowledge of the heirs of the testator; the changes, if any, of the testator's intentions as to the provisions of the will; and any unnatural or unjust provisions which the will may contain. This instruction is open to two objections. One is, that it assumes facts not admitted but which it is the province of the jury to determine; and further, that it is not based on any evidence as to changes in the testator's intentions as to the provisions of the will. The record shows that he had stated to different persons that he expected to remember in his will his niece who had cared for him for so many years. This was but a natural thing for him to do. Nor was there any evidence in the record as to the provisions of the will being unnatural. The two sisters, who with Ethel are the beneficiaries of the will, are both women of advanced years, while plaintiffs in error, children of his deceased brother, are of middle age or less years. It was not error to refuse this instruction.

The third refused instruction told the jury that capacity to comprehend a few details might qualify a person to draw a simple will and intelligently dispose of his property, while if the estate be large and its disposition complicated the same mental capacity may be wholly insufficient. This instruction has no application in a case where, as here, there were no complicated details in the will or complicated items of property. The giving of such an instruction would have been error. *Norton* v. *Clark,* 253 Ill. 557.

There was no error in the record, and the decree of the circuit court will be affirmed.

*Decree affirmed.*