(No. 16829.—Decree affirmed.)
FLORENCE JONES et al. Appellants, vs. WILLIAM WORTH
et al. Appellees.

*Opinion filed December 16, 1925.*

1. WILLS—*when presumption of undue influence arises from a fiduciary relation.* No presumption arises from the existence of a fiduciary relation, alone, that a will in favor of the fiduciary was executed as the result of undue influence, but before such presumption will arise it must be shown that the fiduciary prepared the will or participated in some manner in its preparation or execution, or it must be shown that the confidential relation was used for the purpose of procuring the making of the will.

2. SAME—*when a witness may express an opinion as to mental capacity.* Before a witness can be allowed to express an opinion as to the mental capacity of a testator it is necessary that such witness relate the facts and circumstances which are the basis of his judgment; and whether the evidence shows that the witness has sufficient knowledge of the testator to be competent to express an opinion as to his mental capacity is a question to be decided by the court.

3. SAME—*how opinion evidence should be received by the jury.* The opinion of a lay witness as to the testator's mental capacity is to be received by the jury and valued according to the intelligence of the witness, his capacity to form an opinion, the facts and circumstances upon which his opinion is based, his acquaintance with the testator, his means of observation, and his veracity.

APPEAL from the Circuit Court of Logan county; the Hon. FRANK LINDLEY, Judge, presiding.

EVAN WORTH, and HAROLD F. TRAPP, for appellants.

LYMAN S. MANGAS, PETER MURPHY, and FRANK S. BEVAN, guardian *ad litem,* for appellees.

Mr. JUSTICE HEARD delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Logan county dismissing for want of equity a bill filed by appellants for the purpose of contesting the will of Charles

Worth, deceased, upon the grounds of undue influence and lack of testamentary capacity.

The main grounds urged for reversal of the decree are, that the court erred in instructing the jury to find for appellees upon the issue as to undue influence, that the decree is contrary to the evidence in the case, and that the court erred·in giving and refusing instructions.

The testator died in Lincoln, Illinois, December 21, 1923, at the age of seventy-five years. He left him surviving his daughter Florence Jones, residing in Kansas, his daughter Nellie Sturgis, residing in Springfield, Illinois, his son Roy Worth, residing in Kansas, his son William Worth, residing on his father's farm in Logan county, and his granddaughter, Phœbe Morris, daughter of a deceased son, his only heirs-at-law. He left an estate valued at about $75,000. He had lived on a farm most of his life, moving to Lincoln about 1912. His wife died in 1914, and thereafter he lived alone except for a housekeeper. About two years before his death he had a severe attack of influenza, from which he recovered and was in good health, considering his age, up until the last two months of his life. On October 29, 1923, he suffered a seizure of some sort, which thereafter left him somewhat physically incapacitated. During the later years of his life his son William assisted him in the management of his affairs, and on December 3, 1923, the testator executed a power of attorney giving to William complete power to handle and transact all affairs for the testator, and on that day the funds of the testator were turned over to William. The will in question was executed on December 13, 1923, to take the place of a former will made about two years prior thereto, at a time when, according to appellants' brief and argument, the mind of the testator was unquestioned. The principal change made by the will of December 13, 1923, was that the portion of the estate left to William was greater than that left him by the former will, and it is the contention of the appellants that

by reason of the fiduciary relation existing between the testator and William the presumption of law arises that the will was procured by undue influence.

No presumption arises from the existence of a fiduciary relation, alone, that a will in favor of the fiduciary was executed as the result of undue influence. Before that presumption can arise it must also be shown that the fiduciary prepared the will or participated in some manner in its preparation or execution. (*Britt* v. *Darnell,* 315 Ill. 385.) To create the presumption the evidence must show that the confidential relation existing between the testator and the beneficiary was used for the purpose of procuring the making of the will. (*Goff* v. *Gerhart,* 316 Ill. 513.) In the present case there is no evidence whatever in the record that William had anything to do with the making of the will of December 13, 1923, or that he in any manner participated in its procurement. He was not present at the time it was made, and the evidence does not show that he knew that the testator contemplated making a change in his will until after the will had been made. The will was drawn from data furnished by the testator himself, in the presence of three or four witnesses. There is no evidence in the record which would have justified the court in submitting the question of undue influence to the jury, and the court properly instructed the jury to find for the proponents upon that issue.

As is usual in cases of this kind where the testator is an aged man with physical infirmities, there is much conflicting evidence as to his mental capacity. Seven witnesses expressed the opinion that the testator was not of sound mind and memory, while on the other hand twenty-seven witnesses gave it as their opinion that he was of sound mind and memory, among whom were Anderson, the attorney who drew the will, and the three witnesses, Gale, Goodpasture and Tabke, who were present at its execution. Gale was a retired farmer, who had lived in Lincoln for a number of years and for four years had been a justice of the

peace, whose office the testator often visited. Goodpasture was a retired farmer of about the same age as the testator and had known him intimately for thirty years. Tabke had been for seventeen years president of the American National Bank, had known the testator for many years and had discussed the testator's business and financial affairs with him. December 12, 1923, at about two o'clock P. M., Anderson was told by his partner that the testator wanted him to come up and write his will and had suggested Gale and Goodpasture as witnesses. The witnesses were procured and the three went to the testator's residence, where they were admitted by the housekeeper and taken into the sitting room, where they found the testator sitting in a rocking chair, fully dressed. Anderson stated that he was told that the testator wanted to see him about his will, and the testator answered that he wanted to make a new will. He was asked if he had his old will, and he answered that he had, and produced it from his pocket. It was suggested to him that the former will had been written by a relative of the testator who was an attorney and that it would be all right if he wanted that attorney to act for him. The testator replied that his relative had written his other will but that he wanted Anderson to write this will. The old will was then read aloud slowly, section by section, Anderson making notes of such changes as were desired by the testator. After each of the sections which were unchanged was read to the testator he said, "I want that section left just as it is." The sections which were changed were changed by the testator's express direction and for reasons which he then gave to the persons present. Anderson then asked the testator where he banked, and upon being informed asked him how he would like for him to bring Tabke, his banker, along with him as a witness to the will when he returned, after having the new will typewritten. To this the testator assented. The three men had been there about half an hour. Gale and Anderson then left, Goodpasture remaining, con-

versing with the testator until Gale and Anderson returned, accompanied by Tabke. The new will was then read to the testator while Tabke held in his hands the old will, and at the end of the reading of each clause of the new will Gale stopped the reading and asked the testator if that was the way he wanted it, and at the end of each clause the testator assented. His attention was called to the change in the clause beneficial to William, and he stated that that was the way he wanted it. At the conclusion of the reading of the entire will Tabke asked him if he understood the whole will and if it met his wishes, and he stated that it did. The will was then executed. After the will was executed the testator was asked what he wanted done with the new will, and he gave it to Tabke, with the request that he take it to the bank and keep it for him. He was asked what he wanted done with his old will, and he said he wanted it destroyed, and he himself threw it into the fire and burned it. During the conversation the testator mentioned the various members of his family, talked about the property and gave his reasons for the disposition which he was making of it. These four witnesses all testified that in their opinion at the time of the execution of the will the testator was of sound mind and memory. Without going into the remainder of the testimony in detail, we are of the opinion that the finding of the jury that the testator was of sound mind and memory at the time of the execution of the will was the only one which would have been justified by the evidence.

Complaint is made of the refusal of the court to give two instructions requested by appellants. One of these instructions is substantially the same as an instruction criticised in *Buerger* v. *Buerger,* 317 Ill. 401, and the other instruction was not a correct statement of the law.

Complaint is made of the fourth and fifth instructions given to the jury at the request of appellees, upon the question of the weight to be given to the presumption of sanity. The fourth instruction should not have been given, and

while the fifth is inaccurate, when the entire instruction is taken together with the other instructions in the case the jury could not have been misled by the giving of these two instructions.

It is contended by appellants that the trial court admitted improper evidence in behalf of proponents, and that without sufficient foundation the court permitted witnesses to express an opinion as to whether the testator was of sound mind. Before a witness can be allowed to express an opinion as to the mental capacity of a testator it is necessary that such witness relate the facts and circumstances which are the basis of his judgment; and whether the evidence shows that the witness has sufficient knowledge of the testator to be competent to express an opinion as to his mental capacity is a question to be decided by the court. Such opinion, when permitted to be given to the jury, is to be received by them and valued according to the intelligence of the witness and his capacity to form an opinion, the facts and circumstances upon which his opinion is based, his acquaintance with the person whose mental capacity is in question, his means of observation and his veracity. (*Britt* v. *Darnell, supra.*) The witnesses whose competency to testify was challenged gave the facts upon which they based their opinion. The court decided that they had sufficient knowledge of the testator to be competent to express an opinion as to his mental capacity, and the weight to be given to such testimony was a question for the jury. We do not find any ground for reversal in the ruling of the court as to the admission of or refusal to admit evidence.

The decree of the circuit court was fully justified by the great weight of the evidence in the case, and it will be affirmed.

*Decree affirmed.*