(No. 37353.—

*In re* ESTATE OF VIOLET BIDWILL WOLFNER.—(WALTER H. S. WOLFNER, Appellant, *vs.* CHARLES W. BIDWILL, JR. *et al.,* Appellees.)

*Opinion filed February 1, 1963.—Rehearing denied March 27, 1963.*

UNDERWOOD, J. and SOLFISBURG, C.J., dissenting.

SEARS, STREIT & DREYER, of Chicago, (BARNABAS F. SEARS and JOHN E. DREYER, of counsel,) for appellant.

THOMAS D. NASH, JR. and ROBERT M. AHERN, of Chicago, for appellees.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Walter H. S. Wolfner, surviving husband of Violet Bidwill Wolfner, deceased, objected to the admission of her will to probate. The probate court of Cook County overruled the objections and admitted the will to probate. The objector appeals directly to this court, a freehold being involved.

The will is dated December 19, 1960. It consists of

three pages, including the attestation clause. Except for signatures it is entirely in the handwriting of attorney Robert M. Ahern, who also served as one of the two subscribing witnesses. By its provisions a life interest in certain oil wells was bequeathed to testatrix's husband, and the remainder of the estate was left to her two sons Charles W. Bidwill, Jr., and William V. Bidwill. The sons were appointed "co-executors." At the time of testatrix's death William V. Bidwill was a nonresident of Illinois. He renounced his appointment as co-executor, and the remaining son, Charles, was appointed sole executor.

The objections are that the attorney was not a competent witness because of interest, that the identity of the will was not established because all of the sheets were not shown to have been in the presence of the attesting witnesses, that the court improperly failed to consider the credibility of the attesting witnesses and refused to permit impeachment, and that error was committed in appointing a single executor when the will called for co-executors.

It appears that attorney Robert M. Ahern had known the testatrix for about 15 years. On December 19, 1960, she talked to him by telephone and asked him to come to her home and prepare a will for her. She explained that she was busy getting ready for a trip to Florida and did not want to take the time to go to his office. He accordingly went to her home, arriving about three o'clock in the afternoon. After receiving the needed information he wrote out the will at a card table in the living room. Testatrix then read it and stapled the three pages together, asking the attorney if he would be a witness. He consented but pointed out that at least two witnesses would be required. She thereupon went to the kitchen and returned with Jane Dodson, who was employed as a maid in the home. The testatrix then signed the will at the card table, and at her request the attorney and Miss Dodson signed as attesting witnesses.

Objector contends the witness Ahern was incompetent by virtue of interest because (as objector sought to show) he performed legal services for the testatrix and her two sons, and was retained as counsel to certain business enterprises in which testatrix held substantial amounts of stock and in which the two sons were directors and officers as well as stockholders. There is no merit in the contention. The interest which disqualifies a witness must be such an interest in the will that a pecuniary gain or loss will come to him directly as the immediate result of its provisions. (*Britt* v. *Darnell,* 315 Ill. 385, 392.) The interest sought to be shown here falls short of such a standard. The fact that as a result of the will his chances might be better of enjoying continued employment by his individual clients or the corporations under their influence shows at best only a remote and indirect interest. Such expectancies or possibilities do not give a witness the kind of interest which makes him incompetent. *Britt* v. *Darnell,* 315 Ill. 385, 392-393.

*Smith* v. *Goodell,* 258 Ill. 145, upon which the objector places his principal reliance, is distinguishable. In that case a business partner of certain individuals named as executors was held incompetent to act as an attesting witness where the partnership agreement provided that he was to share in any fees earned by the others while acting as executors or administrators. In reaching that conclusion we pointed out that this gave him "a present, certain, legal interest of a pecuniary nature in the subject matter" and that insofar as pecuniary interest is concerned his relationship to the will was the same as that of an executor. In the case at bar, on the other hand, there is no pecuniary relationship to the will at all. Ahern was not mentioned therein nor did he have any agreement with anyone named in the will to participate directly or indirectly in the estate or in its administration. It is clear that his interest, if any, was not

such as to afford him a pecuniary gain as a direct result of the will.

The next contention is that the document was not properly identified as the will of testatrix. This contention is based in part on the fact that when the witness Dodson signed on the last page, the other pages were folded back, preventing her from being able to identify each sheet as having been present. Also relied upon is the fact that at the time of execution the document had no cover, that at the time of probate it was bound together with a blue-back having holes where staples had apparently been removed, that there were no holes in the will itself corresponding to the staple marks on the blue-back, and that although Ahern stated he had attached the blue-back after he received the will from the surviving beneficiaries, he gave no satisfactory explanation for the extra staple holes in the blue-back. He testified, however, that when he presented the will for filing the deputy clerk who received it told him the blue-back would have to be removed so that the pages of the will could be photostated.

We cannot undertake to assume the functions of a trial court and decide factual questions, as the objector would have us do. Our function is limited to determining whether the probate judge was warranted in finding as he did. The testimony of Miss Dodson that all but the last page were "flipped over" when she signed does not have the effect urged by the objector. Nor is the mere presence of extra staple holes in the blue-back enough to require a rejection of the will. On this record the cause or occasion of their appearance can be based only on surmise and conjecture. The will in its entirety appears coherent. Its phraseology and continuity of thought proceed from the first page to the second and from the second to the last without any semblance of break or interruption. And there is ample testimony that the will is in the same condition,

except for the blue cover, as it was when the witnesses signed. Where a will is written on separate sheets of paper, loosely fastened together, it is always possible that one or more sheets might be removed and others substituted. But the possibility of this being done is not sufficient to justify denying admission of a will to probate. *Palmer* v. *Owen,* 229 Ill. 115.

In a proceeding to probate a will the credibility of witnesses testifying on the question of its valid execution is primarly a matter for the court hearing the case. (*In re Estate of Calo,* 1 Ill.2d 376; *In re Estate of Walsh,* 400 Ill. 454.) In the case at bar the probate court gave credit to the testimony of the subscribing witnesses. We cannot say it was not warranted in so doing.

The objector complains that the court unduly restricted him in his cross-examination of the attesting witnesses. Without specifying the inquiries in question, he argues generally that he sought to question credibility of Ahern "to show his interest, and to show the nature of the relationship between the witness and his clients, and the relationship between the witness and the decedent." With respect to the witness Jane Dodson he sought to question her about a conversation she had with a friend following the funeral. When objection was sustained he made an offer to prove she remarked to her friend that she herself had signed her name four times as witness to the will. From our examination of the questions and the rulings of the court in the light of the entire record, we do not think any prejudicial error was committed.

The last contention is that by the use of the word "co-executors" in appointing the two sons executors the testatrix manifested an intention that there be a joint executorship and if both sons could not serve the direction be disregarded. It is urged that since the prefix "co" is used there is no basis for presuming she intended the remaining execu-

tor to act, and that an administrator with the will annexed should have been appointed in the order of preference designated by the Probate Act. We cannot accept the contention. Section 75 of the act specifically provides that unless the will states otherwise, if one of several executors fails to qualify "letters testamentary shall be issued to the executor who qualifies and accepts the office" (Ill. Rev. Stat. 1961, chap. 3, par. 75), and section 76 provides that in such a situation "the remaining executor shall proceed to administer the estate and has all powers vested in all the executors named in the will." (Ill. Rev. Stat. 1961, chap. 3, par. 76.) The will in the present case contains no provision to the contrary effect. It is clear that the court acted properly in granting letters testamentary to petitioner Charles W. Bidwill, Jr.

No prejudicial error having been shown, the order of the probate court of Cook County admitting to probate the last will of Violet Bidwill Wolfner is affirmed.

*Order affirmed.*

Mr. Justice UNDERWOOD dissenting:

I am compelled to dissent. In my judgment the majority opinion errs in approving what is to me an abuse of the trial court's discretion in unduly restricting the cross-examination of the attesting witnesses by respondent, particularly with reference to the witness Jane Dodson.

Counsel for respondent asked this witness whether she recalled a conversation with a third party following decedent's death, identifying the party, time and place, but an objection to the question was sustained. Counsel then offered to prove by this witness that the witness had told the third party, after reading a newspaper article stating the will had three pages, that "Mr. Ahern flipped over four pages that were written in longhand, and that she, the witness, signed her name four times; * * * that she said,

'How could she sign four times when the will only had three pages,' and she, the witness, also said that she distinctly remembers signing four times." An objection to this offer was also sustained.

Assuming the witness, if permitted to do so, would have testified as indicated by counsel, such statement would have been directly contrary to her testimony at the hearing, and proper for the trial court to consider in determining the credibility to be accorded her testimony. (*Craig* v. *Trotter,* 252 Ill. 228.) Petitioner argues that respondent cannot here complain of the trial court's action because Toni Zollner, the impeaching witness was never produced at the hearing. Clearly, no reason to call Toni Zollner as a witness existed until such time as a proper foundation for impeachment had been laid, and, if Jane Dodson admitted a conversation with Toni Zollner as outlined in the offer of proof, no reason would have existed to call Toni Zollner at all. When the trial court sustained objections to all questions relating to this subject, and refused the offer of proof, it would be unreasonable to compel the respondent to undertake the obviously useless formality of calling a witness in order to preserve his objection when the court has indicated such witness will not be permitted to testify. *Garvey* v. *Chicago Railways Company,* 339 Ill. 276.

It is neither this court's duty nor right to determine the credibility of the witnesses, but it is our duty to ascertain whether the trial court's determination of this question was made according to established rules. The offered proof was relevant on the question of credibility. It should have been permitted. I would remand for this purpose.

Mr. CHIEF JUSTICE SOLFISBURG joins in this dissent.