In the Estate of Mary B. Koss, a/k/a Mary B. Schenecker, Deceased.
Petition of Lorraine E. Steffens That the Will of Said Decedent Be Admitted to Probate and That Letters Testamentary Issue.
Lorraine E. Steffens, Petitioner-Appellant, v. County of Cook, Illinois, Appellee.

Gen. No. M–51,353.

First District, Fourth Division.

May 19, 1967.

Harold C. Osburn and Miller, Gorham, Wescott & Adams, of Chicago (Harold C. Osburn and John F. Arnold, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Edward J. Hladis, Chief of Civil Division, and Donald J. Veverka, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Lorraine E. Steffens filed a petition to admit to probate the will of Mary B. Koss, under which she was the executrix and sole beneficiary. After a hearing thereon the will was refused probate and an order was entered denying the petition. Petitioner appeals from that order and from various other orders entered during the course of the proceedings. Appellee, the County of Cook (to which the estate of the decedent would escheat under the intestate laws if the will was refused probate) filed a motion in this court to dismiss the appeal on the ground that appellant failed to file a notice of appeal within the time allowed by section 76 of the Civil Practice Act.

## Motion to Dismiss the Appeal

The order denying the petition to admit the will to probate was entered on November 23, 1965, and the notice of appeal was filed on January 20, 1966, 58 days from the entry of the order. At the time the judgment order was entered section 76 of the Civil Practice Act (Ill Rev Stats 1963, c 110, § 76) allowed 60 days to file a notice of appeal. Section 76 was amended on May 19, 1965, by an act effective January 1, 1966, shortening the period allowed for filing a notice of appeal to 30 days. In its motion appellee contends that the 30-day limitation in the new act is applicable to this appeal, notwith-

standing that the 30-day period would expire prior to the effective date of the act. In support thereof appellee asserts that:

> The new Section 76 was published in the 1965 Illinois Revised Statutes along with the old Section 76. The old Section 76 was preceded in the Statutes with the notation, "Text of Section 76 until Jan. 1, 1966," while the notation "Amendment of 1965, effective Jan. 1, 1966" preceded the new Section 76. By so doing the Legislature gave full notice that the time requirement for filing a notice of appeal, a procedural matter, was being changed.

In opposition to the motion appellant argues that article VI, section 7, of the Illinois Constitution (Ill Const art VI, § 7 (1964)) effective January 1, 1964, provides that "appeals from final judgments of a Circuit Court lie as a matter of right to the Appellate Court in the District in which the Circuit Court is located"; that the constitutional right attaches at the time the final appealable order is entered; that at the time thereof she was allowed 60 days in which to file a notice of appeal; and that the time period, being constitutional in nature, cannot be retroactively shortened by the legislature.

We believe that the case of George v. George, 250 Ill 251, 95 NE 167, is directly in point. In that case a writ of error to review a decree entered on March 29, 1907, was issued on September 20, 1910, more than three years after the entry of the decree. When the decree was entered there was a five-year statute of limitations for prosecuting a writ of error, which period was shortened to three years by a new act effective July 1, 1907. The court held the five-year period to be applicable and stated at pages 253–256 that:

> The jurisdiction of this court to review the judgments and decrees of trial courts in this class of

cases by writs of error does not depend upon the statute. That jurisdiction is conferred by the constitution, and the right to sue out a writ of error is a constitutional right and must be allowed when claimed. (Schlattweiler v. St. Clair County, 63 Ill 449.) Section 2 of article 6 of the constitution provides that the Supreme Court shall have original jurisdiction in cases relating to the revenue, in mandamus and habeas corpus, and appellate jurisdiction in all other cases. Section 8 of the same article provides that appeals and writs of error may be taken to the Supreme Court. In this case a freehold is involved, and the parties to this decree have a constitutional right to sue out a writ of error in this court to review that decree. It is not within the power of the legislature to deprive the Supreme Court of the jurisdiction to review such cases by writs of error or in any manner to abridge that jurisdiction, but the legislature may by proper enactment regulate the practice in respect to writs of error and may limit the time within which writs of error may be sued out of this court. Section 117 of the Practice act of 1907 does not attempt or pretend to confer jurisdiction upon the Supreme Court to review judgments and decrees by writs of error, but merely limits the time within which such writs may be sued out. It is strictly a statute of limitations and must be construed as such.

. . . . . .

In that case [referring to Hathaway v. Merchants' Trust Co., 218 Ill 580] we held that the section of the Administration act fixing the time for filing claims against an estate is not a statute conferring jurisdiction but is a limitation act, which will not be given retroactive effect in the absence of clear legislative intention, and that the act, as

63

amended by the act of 1903 reducing the time for filing claims to one year [after the issuance of letters testamentary], does not apply to claims against an estate upon which letters testamentary had been granted before the act took effect. [In the instant case] there is nothing in section 117 of the Practice act of 1907 which indicates that the legislature meant it to be retroactive in its effect.

. . . . . .

In addition to the general rule that limitation acts will not be given a retroactive effect in the absence of clear legislative intention, section 4 of the act to revise the law in relation to the construction of statutes [1] provides that no law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any right accruing or claim arising under the former law, or in any manner whatever to affect any right accruing or claim arising before the new law takes effect. The right of plaintiffs in error to sue out a writ of error from this court to review the decree of the superior court of Cook County, and thus begin a new suit, accrued at the time that decree was entered, and therefore was a right accruing under the law in effect at that time. The statute at that time provided that a writ of error should not be brought after the expiration of five years from the rendition of the decree or judgment complained of.

Defendants in error insist, however, that as this decree was rendered on March 29, 1907, and the new Practice act became effective on July 1, 1907, plaintiffs in error had almost three years within which to sue out this writ of error after that act became

---

[1] That section is still in force today. Ill Rev Stats 1965, c 131, § 4.

effective, and that as this must be held to be a reasonable time, the new limitation should prevail in this case. This act must be applied generally to all causes of action accruing before the act of 1907 became effective. It cannot be said that the act will apply in one case and not in another.

 Jurisdiction of the Appellate Court is now conferred by the Constitution, and the right to appeal is guaranteed by the Constitution. Therefore section 76 of the Civil Practice Act cannot be construed as a statute conferring jurisdiction but instead must be construed as a limitation act. Since a limitation act will not be given retroactive effect in the absence of clear legislative intention (George v. George, supra), and no such intention appears from an analysis of section 76, that limitation act which was in effect at the time the right to appeal accrued is applicable.[2] Thus, the petitioner in the instant case had 60 days from the entry of the final appealable order in which to file a notice of appeal. Marlas v. Virekeos, 14 Ill App2d 1, 142 NE2d 808, relied upon by the appellee, is inapplicable because at the time of that case Appellate Court jurisdiction was not conferred by the Constitution nor was the right to appeal guaranteed

---

[2] We note that in its order adopting the revised Supreme Court Rules (which are effective January 1, 1967) the Supreme Court stated:

They govern all proceedings in actions commenced after they take effect. They also govern all further proceedings in actions then pending, with the following exceptions: (a) When in a pending action or an action in which a judgment is still subject to review the time allowed under the former procedure for the doing of any act has commenced to run, the time allowed is not shortened by the new rules. (b) To the extent that in the opinion of the trial, Appellate, or Supreme Court the application of the new rules in a particular action then pending would not be feasible or would work injustice, the former procedure applies.

by the Constitution. In Exchange Nat. Bank v. Village of Skokie, 71 Ill App2d 215, 217 NE2d 336, a case relied upon by appellees which was subsequent to the effective date of section 7 of article VI of the Constitution, an argument based upon George v. George, supra, was not presented in opposition to the motion to dismiss. Our opinion was incorrect and is hereby overruled.[3]

Since the notice of appeal was filed 58 days after the entry of the final appealable order, appellee's motion to dismiss the appeal is denied.

### Admissibility of the Will to Probate

On May 26, 1965, the decedent (Mary B. Koss) purportedly executed her last will and testament in which she left her entire estate to a longtime friend, Lorraine E. Steffens (also known as Lorraine Hamann), who was also named as executor. Mary Koss died two days later, leaving no known heirs at law. The alleged will was witnessed by two persons, Armelia Warren and Marie Redmond, both of whom were employed as nurses to the decedent. Immediately above their signatures was an attestation clause which provided that:

> The foregoing instrument at its date was subscribed by the testator, MARY B. KOSS, in our presence, and at the same time was declared by her to be her last Will, and at the same time, in her presence, at this request and in the presence of each other we have hereunto subscribed our names as witnesses. We do hereby certify that at the time of the execution of the foregoing Will the Testator was of sound mind and memory.

At the hearing to admit the will to probate one of the witnesses, Marie Redmond, appeared without subpoena

---

[3] In the Exchange National Bank case we allowed a petition for leave to appeal.

and testified as to all of the statutory requisites. The other attesting witness, Armelia Warren, appeared under subpoena and testified that the document offered for probate was signed by the decedent in her presence and that both of the attesting witnesses signed in the decedent's presence. However, she denied that she knew that the document was a will and asserted that she was informed by Lorraine Steffens that the document was a power of appointment so that the nurses could be paid. Notwithstanding her certification in the attestation clause, Armelia Warren also testified that she did not believe the testator was of sound mind. She stated that her conclusion as to the soundness of testatrix' mind was based upon her opinion that the testatrix was "mentally incompetent, frightened, very anxious and complaining of pain." The witness further stated that she could not read any portion of the document which she signed because her glasses had broken that day. Armelia Warren also testified that the document which she signed consisted of only one page at the time it was signed and attested, instead of the three pages in the document offered for probate.

The testimony of Armelia Warren was subject to various contradictory and impeaching facts and evidence:

(1) Marie Redmond testified that after the decedent's death Armelia Warren informed her that unless she was paid $1,000 she would not appear as a witness and that she would fight admission of the will to probate all the way to the Supreme Court. This testimony was never contradicted.

(2) While Armelia Warren testified that she had broken her glasses, and therefore was unable to read, by her own admission she read to the decedent every day from the Bible. She made no exception as to the day in question. Moreover, she was able to see the document well enough to sign her name on the line provided there-

67

for and to write her address after the word "address." There is no testimony that anyone told her exactly where to sign the document and, therefore, if she could not read without her glasses Armelia Warren would not have signed in the correct place.

(3) Marie Redmond testified that the glasses were worn by Mrs. Warren on a chain around her neck, and that she used the glasses whenever she read or wrote; and that on the day in question Armelia Warren made entries on the chart kept of Mary Koss' condition. Armelia Warren did not deny that she made those entries.

(4) While Armelia Warren testified that the document she signed contained only one page, the page on which her signature appears contains the phrase in capital letters "PAGE THREE OF THREE PAGES."

(5) William Button, an attorney who prepared the alleged will in the presence of the decedent, testified that he conversed with the decedent concerning her assets and was satisfied that she was a capable person. He stated:

> [T]he Estate had arisen as a result of Mrs. Koss and her husband being in the drug business, and that he had died and there was no one, no heirs, and that she wanted her estate to go to Mrs. Steffens, because that is what she wanted.
>
> Then, at this point, I was satisfied in my own mind that Mrs. Koss was a capable person, and I asked her and said what estate do you have exactly?
>
> She mentioned that she had two bank accounts and that she had some stocks but that in one bank account it was in her maiden name.
>
> . . . . . .
>
> She told me the names of the stocks and the bank accounts and there was some mention about steel

68

cabinets and a white cabinet and I further noted the fact that she wanted to be cremated.

Button further stated that Armelia Warren was present in the decedent's room as he was preparing the will; that he turned to her, told her that he was preparing Mrs. Koss' will and requested that she sign it as a witness, and she assented. Button testified that the will was three pages in length, and the pages were put within bluebacks and fastened with grommets. (This was the condition of the will as it was filed for probate.) After he finished the will Button testified that he turned to Marie Redmond and Armelia Warren and said: "I have finally finished Mrs. Koss' Will and will you please act as witnesses to the will?" The will was then signed by the decedent and by the two witnesses in the presence of the decedent.

■ Section 69 of the Probate Act (Ill Rev Stats 1965, c 3, § 69) governs the admissibility of a will to probate. It provides:

> When each of 2 attesting witnesses to a will testifies before the court (a) that he was present and saw the testator or some person in his presence and by his direction sign the will in the presence of the witness or that the testator acknowledged it to the witness as his act, (b) that the will was attested by the witness in the presence of the testator, and (c) that he believed the testator to be of sound mind and memory at the time of signing or acknowledging the will, the execution of the will is sufficiently proved to admit it to probate unless there is proof of fraud, forgery, compulsion, or other improper conduct which in the opinion of the probate court is deemed sufficient to invalidate or destroy the will. The proponent may also introduce any other evidence competent to establish a will in chancery. If the pro-

ponent establishes the will by sufficient competent evidence it shall be admitted to probate unless there is proof of fraud, forgery, compulsion, or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will.

It is settled law that execution of an instrument may be sufficiently proved where one attesting witness testified positively to the requisites of execution and the other witness does not recollect or denies compliance with the statutory requisites. Loomis v. Campbell, 333 Ill App 617, 78 NE2d 143. In that case the court allowed a will without an attestation clause to be admitted to probate even though one of the attesting witnesses (who was an heir at law of the testatrix) admitted the validity of her signature but denied that she signed a will. The witness in that case testified that on some undetermined occasion she signed her name only on a blank piece of paper in connection with placing a horse racing bet; and that on the date she allegedly signed the will she was at her home in another city.

Where an attestation clause is in due form and the will bears the genuine signatures of the testatrix and of the witnesses this is prima facie evidence of the due execution of the will, which cannot usually be overcome by the testimony of a witness that there was not compliance with all of the statutory requisites. Jenkins v. White, 298 Ill 502, 131 NE 634. (See also In re Estate of Hart, 79 Ill App2d 134, 223 NE2d 466.) The testimony of a subscribing witness which seeks to impeach a will is to be viewed with suspicion and received with caution. Spangler v. Bell, 390 Ill 152, 60 NE2d 864; Jenkins v. White, supra.

In the instant case the credibility of the testimony of Armelia Warren hinges primarily upon the veracity of her claim that she had broken her glasses on the date of the alleged execution of the will. This claim is contra-

70

dicted not only by the testimony of the other attesting witness, Marie Redmond, that the glasses were on a chain around her neck but also by (1) the uncontradicted testimony of Marie Redmond that Armelia Warren made entries on the chart kept of the testatrix' condition on the date in question (and therefore could read the chart to ascertain where to make the entries); (2) the admission of Armelia Warren that she read to the testatrix each day (making no exception for the day in question); and (3) the fact that Armelia Warren could see exactly where on the instrument to sign her name and address, apparently without direction from any other person. The credibility of Armelia Warren's testimony is further affected by (1) the uncontradicted testimony that she demanded $1,000 or she would fight probate of the will all the way to the Supreme Court; and (2) the testimony of a licensed attorney who stated that he had an intelligent conversation with the testatrix which led him to conclude that she was of testamentary capacity, and that he informed Armelia Warren that she was signing as a witness to the decedent's will.[4]

Since the amendment to section 329 of the Probate Act (Ill Rev Stats 1963, c 3, § 329) an appeal from an order denying probate to a will is governed by the same principles as other civil appeals in reviewing alleged errors of the trial court. Knaphurst v. Lindauer, 61 Ill App2d 269, 210 NE2d 23. A judgment will be reversed on appeal if it is manifestly against the weight of the evidence. Hubbard v. Checker Taxi Co., 54 Ill App2d 392, 203 NE2d 441. In the instant case we find that the order of the trial judge denying admission of the will of Mary Koss to probate was against the manifest weight of the evidence.

---

[4] Appellee refers to statements of the attorney to Mrs. Steffens relating to a possible will contest as supporting its position. However, these statements actually support the contention of appellant that this document was indeed executed as a will.

■

Therefore the order of the circuit court is reversed and the cause remanded with directions to admit the will of Mary Koss to probate.

Reversed and remanded with directions.

ENGLISH, P. J., concurs, and McCORMICK, J., concurs in the decision but not with everything said therein concerning the motion to dismiss.