*In re* ESTATE OF OTTO T. JAEGER, Deceased—(MATHILDA A. (TILLIE) NOBS *et al.,* Petitioners, *v.* ROBERT REISS, Adm'r, *et al.,* Respondents.)

(No. 72-251;

Fifth District—January 9, 1974.

*Rehearing denied February 7, 1974.*

Russell H. Classen, of Belleville, for petitioners.

Donald C. Rikli, of Highland, for respondents.

Mr. JUSTICE CREBS delivered the opinion of the court:

Petitioner, Mathilda Nobs, appeals the decision of the Circuit Court of Clinton County which denied probate to a will purported to be the will of one Otto T. Jaeger and also the decision of the same court which revoked her authority to act as administrator of said estate.

Mathilda Nobs filed a purported will of Otto Jaeger, deceased, and also filed a petition to probate the same in the Probate Division of the Circuit Court of Clinton County, Illinois. The will was purportedly signed by the said Otto Jaeger and was also purportedly witnessed by Elmer Kunze and J. Scranton, both of Belleville, Illinois.

Elmer Kunze testified in court as to the acknowledgment before him and the attestation of the purported will by him. Kunze's character was impeached when the respondents introduced evidence of the fact that Kunze at one time plead guilty to a charge of income tax evasion. The other attesting witness, J. Scranton, was deceased. The testimony of Armin Forcade, a subordinate employee of James Melvin Scranton at the St. Clair Service Company, Belleville, testified as to the authenticity of the handwriting of J. Scranton on behalf of the proponent of the will. Elizabeth Mary Scranton, the widow, and James Robert Scranton, son of James Melvin Scranton both testified on behalf of the contestants that the signature "J. Scranton" appearing on the purported will was not the signature of James Melvin Scranton.

Justine Bradley, who did not sign the document as an attesting witness, testified on behalf of the proponent that he was present when a witness named "Elmer" signed the purported will and that he was also present when a man he assumed to be J. Scranton signed the purported will, however, Bradley stated that the signings occurred in different places at different times. Bradley testified at a subsequent hearing ten months after the original hearing.

The Probate Division of the Circuit Court of Clinton County denied probate to the purported will of Otto T. Jaeger for the reason that the document was not witnessed by two witnesses as required by statute.

Mathilda Nobs, the petitioner, takes the position that the purported

will should be admitted to probate on the basis of the testimony of Elmer Kunze, who was the one attesting witness who testified in court; on the basis of the testimony of Armin Forcade, who testified as to the signature of J. Scranton, the other attesting witness; on the basis of the attestation clause appearing on the purported will; and on the testimony of Justine Bradley, who said he saw both witnesses sign the purported will. Mathilda Nobs asks that the decision of the trial court be reversed.

The admission or denial of a document to probate is covered by the following statute:

> "When each of two attesting witnesses to a will testifies before the court (a) that he was present and saw the testator or some person in his presence and by his direction sign the will in the presence of the witness or that the testator acknowledged it to the witness as his act, (b) that the will was attested by the witness in the presence of the testator, and (c) that he believed the testator to be of sound mind and memory at the time of signing or acknowledging the will, the execution of the will is sufficiently proved to admit it to probate unless there is proof of fraud, forgery, compulsion, or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will." Ill. Rev. Stat. 1971, ch. 3, par. 69.

■■■ In this case the will was not admitted to probate. The plaintiff claims this was error. In *Ruffing v. Glissendorf*, 41 Ill.2d 412, 243 N.E.2d 236, our Supreme Court stated the criteria to be considered by the trial court in deciding whether to admit a will to probate:

> "It has long been recognized that the proof necessary to entitle a will to probate is confined to the essential elements fixed by the statute (section 69 and its predecessors) and is for the purpose of establishing whether a *prima facie* case of validity has been made. (*In re Will of Ingalls*, 148 Ill. 287; *Claussenius v. Claussenius*, 179 Ill. 545.) The hearing is to determine whether the will has been executed with the formalities required by statute, including testimony of two subscribing witnesses that in their belief the testator was of sound mind."

The statute reserves the right of the contestants to show fraud, compulsion, forgery, or other improper conduct sufficient to invalidate the will.

Where the testator and two attesting witnesses in fact signed the will, every presumption will be indulged in favor of the execution and attestation of the will. *Loomis v. Campbell*, 333 Ill.App. 617, 78 N.E.2d 143; *In re Estate of Willavize*, 21 Ill.2d 40, 171 N.E.2d 21; *In re Estate of Hart*, 79 Ill.App.2d 134, 223 N.E.2d 466.

■■ If the instrument contains an attestation clause which shows on its face that all of the formalities required by law have been met, and the signatures on the instrument are admittedly genuine, a prima facie case has been made in favor of the due execution of the will. (*In re Estate of Koss*, 84 Ill.App.2d 59, 228 N.E.2d 510.) This prima facie case is not, however, conclusive, for it cannot prevail over the positive testimony of the subscribing witness that one of the requirements of the statute was not met. *In re Estate of Balicki*, 408 Ill. 84, 96 N.E.2d 516; *Conway v. Conway*, 14 Ill.2d 461, 153 N.E.2d 11; *In re Estate of Thomas*, 6 Ill.App. 3d 70, 284 N.E.2d 513.

■■ In this case from all of the evidence it is clear that the attestation clause does not speak the truth in that the attesting witnesses did not sign in the presence of each other. Therefore the attestation clause alone cannot establish a prima facie case in favor of the due execution of the will.

One of the requirements for the prima facie case is that the signatures be genuine. In this case the signature, J. Scranton, appears on the instrument. The parties agree that J. Scranton is James Melvin Scranton who is now deceased.

■■ *In re Estate of Russell*, 130 Ill.App.2d 839, 840, 264 N.E.2d 269, the court addressed itself to the situation where one of the attesting witnesses is no longer alive.

"Section 74 of the Probate Act (Ill. Rev. Stat. 1955, ch. 3, par. 74) provides:

> "When a witness to a will is dead the court may admit proof of the handwriting of the witness and such other secondary evidence as is admissible in any court of record to establish written contracts and may admit the will to probate as though it has been proved by the testimony of the witness.'

In case of the death of a witness proof of his handwriting is admissible with the same effect as if he had appeared and testified in his own person. *More v. More*, 211 Ill. 268; *O'Brien v. Bonfield*, 213 Ill. 428." Here the court received evidence concerning the signature of James Melvin Scranton. The genuineness of this signature is necessary to prove the due execution of the will. If the signature on the instrument was not that of James Melvin Scranton, then the requirements of the probate act were not adhered to and the trial court acted properly in denying the will to probate.

The petitioner presented Armin Forcade who had worked under James Melvin Scranton as a witness. Forcade said he had seen Scranton sign many checks and that in his opinion the signature on the instrument was that of James Melvin Scranton.

James Robert Scranton testified for the respondents. He is the son of the late James Melvin Scranton and he said the signature J. Scranton on the document was not genuine. He stated that he had seen his father's signature on many occasions, that the signature was "distinctive" and that his father's penmanship was neat.

Elizabeth Mary Scranton, widow of James Melvin Scranton, testified that the signature on the instrument in question was not that of her late husband.

■■ We cannot undertake to assume the functions of a trial court and decide factual questions. Our function is limited to determining whether the probate judge was warranted in finding as he did. (*In re Estate of Wolfner*, 27 Ill.2d 221, 188 N.E.2d 712, 715.) The judge heard testimony on both sides concerning the authenticity of the signature of J. Scranton. He chose to believe the respondents. In a proceeding to probate a will the credibility of the witnesses testifying on the question of its valid execution is primarily a matter for the court hearing the case. (*In re Estate of Wolfner, supra.*) Both the son and the wife of the late James Melvin Scranton testified that the signature on the instrument was not that of James Melvin Scranton. It seems particularly significant that the signature appearing on the document is J. Scranton. James Robert Scranton testified that his father never omitted his middle name or his initial from his signature for the reason that he was known as "Melvin Scranton." We cannot say that the trial court was incorrect in finding that the signature was not that of James Melvin Scranton.

The petitioner cites *Mead v. Trustees of the Presbyterian Church*, 229 Ill. 526, and *In re Will of Porter*, 309 Ill. 220, 140 N.E. 856, as holding that execution of an instrument may be proved where only one witness testifies positively to the requisite execution. However, in *Mead* both witnesses wrote the word "witness" after their signatures. One testified at the hearing and the other was questioned by deposition. Each stated that their signature was genuine and that they knew they were witnessing the execution of an instrument even though there was no attestation clause. Thus that case can be distinguished from the one at bar. In *Porter* the holding is that the will should be admitted if the proponents have established that the signatures of the testator and the subscribing witnesses are genuine. That fact has not been established in the case before us.

■■ Considering all of the facts we cannot say that the decision of the trial court was against the manifest weight of the evidence.

On October 15, 1971 the Probate Division of the Circuit Court of Clinton County appointed Robert Reiss and Mathilda Nobs as coadministrators and set the coadministrator's bond in the amount of $20,-

000.00. On the same date Robert Reiss filed his oath and bond in the amount of $20,000.00 and the bond was approved, but the letters of administration were not issued to him because Mathilda Nobs had not filed her bond.

Nine months passed and the coadministrator's bond of Mathilda Nobs still had not been filed or approved and letters of administration still had not been issued to either Robert Reiss or Mathilda Nobs, although Robert Reiss had qualified nine months earlier.

A verified petition to remove Mathilda Nobs was filed on the foregoing grounds and an order to show cause and a citation was issued and served upon her.

On August 2, 1972 Mathilda Nobs filed her motion to dismiss the petition and for the first time she stated that the amount of the bond required of her was excessive.

The testimony of Mathilda Nobs was taken in which she admitted that she had not filed her bond and that she had taken possession of the property of the estate. The court thereupon revoked her authority to act as coadministrator.

The petitioner maintains that the court erred in revoking her authority as coadministrator. She maintains that the bond required was excessive and that she alone has cared for the estate of Otto Jaeger by taking care of the various animals and the home of the decedent.

The statute regarding bonds in any estate provides:

"Before entering upon the performance of his duties, every individual executor, administrator * * * shall take and file an oath or affirmation that he will faithfully discharge the duties of his office according to law and shall file in and have approved by the court a bond binding himself so to do." Ill. Rev. Stat. 1971, ch. 3, par. 148.

We find that the petitioner's failure to post the required bond or to take any other action for a period of nine months provided the court with sufficient reason for removing Mathilda Nobs as coadministrator.

Finding no reversible error the judgment of the Circuit Court of Clinton County is affirmed.

Affirmed.

EBERSPACHER, P. J., and JONES, J., concur.