703 N.E.2d 620 (1998)
301 Ill. App.3d 500
234 Ill.Dec. 759
In re ESTATE OF Tomasa ALFARO, Deceased (Juanita Koble et al., Petitioners-Appellants,
v.
Santos Alfaro et al., Respondents-Appellees).
No. 2-97-0916.
Appellate Court of Illinois, Second District.
November 24, 1998.
*622 Thomas B. Hood, Thomas B. Hood Law Offices, P.C., Gurnee, and Clayton P. Voegtle, Voegtle & Lichter, Libertyville, for Ramona Alcala, Estate of Tomasa Alfaro and Juanita Koble.
David M. Stepanich, Waukegan, for Antonio Alfaro, Domingo Alfaro, Julian Alfaro, Santos Alfaro, Thomas Alfaro and Felipa Navarro.
Justice BOWMAN delivered the opinion of the court:
In this will contest case, petitioners, Juanita Koble and Ramona Alcala (proponents of the will), appeal from the circuit court's order granting summary judgment to respondents, Santos Alfaro, Domingo Alfaro, Julian Alfaro, Antonio A. Alfaro, Tomas Alfaro, and Felipa Navarro (contestants of the will). On appeal, the proponents argue that the trial court erred in finding the will invalid and granting summary judgment to the contestants of the purported will of Tomasa Alfaro (Alfaro), deceased. Under the circumstances presented, we conclude that the entry of summary judgment was inappropriate. We reverse the judgment and remand the cause for further proceedings.
Before we consider the facts and merits of this appeal, we briefly examine the requirements for admitting a will to probate and for contesting a will. Section 6-4 of the Probate Act of 1975(Act) states:
"(a) When each of 2 attesting witnesses to a will states that (1) he was present and saw the testator or some person in his presence and by his direction sign the will in the presence of the witness or the testator acknowledged it to the witness as his act, (2) the will was attested by the witness in the presence of the testator and (3) he believed the testator to be of sound mind and memory at the time of signing or acknowledging the will, the execution of the will is sufficiently proved to admit it to probate, unless there is proof of fraud, forgery, compulsion or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will. The proponent may also introduce any other evidence competent to establish a will. If the proponent establishes the will by sufficient competent evidence, it shall be admitted to probate, unless there is proof of fraud, forgery, compulsion or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will.
(b) The statements of a witness to prove the will under subsection 6-4(a) may be made by (1) testimony before the court, (2) an attestation clause signed by the witness and forming a part of or attached to the will or (3) an affidavit which is signed by the witness at or after the time of attestation and which forms part of the will or is attached to the will or to an accurate facsimile of the will." 755 ILCS 5/6-4 (West 1996).
The probate process represents a continuum of proceedings, and an order of admission is among the first to be entered. The admission proceeding is limited to determining whether a prima facie showing of compliance with section 6-4(a) of the Act has been made. In re Estate of Lynch, 103 Ill.App.3d 506, 507-08, 59 Ill.Dec. 233, 431 N.E.2d 734 (1982). However, the admission of a will to probate is not res judicata as to issues that may be raised in a later will contest, and such a contest allows the relitigation of the same issues raised in the admission proceeding. Lynch, 103 Ill.App.3d at 508-09, 59 Ill.Dec. 233, 431 N.E.2d 734. An order admitting a will to probate is not final as to the validity of the will where a timely, direct contest of the will is initiated in the same proceeding. The question presented in a will contest is not whether the will was properly admitted but whether the will is to be declared valid or invalid, and all *623 questions concerning the validity of the will are tried de novo. Sternberg v. St. Louis Union Trust Co., 394 Ill. 452, 459, 68 N.E.2d 892 (1946); In re Estate of Koziol, 236 Ill. App.3d 478, 485-86, 177 Ill.Dec. 279, 603 N.E.2d 60 (1992).
The procedures and quantum of proof are quite different in the two types of litigation. While the admission proceeding requires only a prima facie showing of the validity of the will, the will contest provides the contestant a full opportunity, after admission, to investigate thoroughly all the circumstances affecting the validity of the instrument. Lynch, 103 Ill.App.3d at 509, 59 Ill. Dec. 233, 431 N.E.2d 734. In a will contest, the burden is on the contestant to provide proof sufficient to overcome the prima facie validity of the previously admitted will. Lewis v. Deamude, 376 Ill. 219, 221-22, 33 N.E.2d 440 (1941).
The statutory scheme preserves the right of a contestant to show fraud, compulsion, forgery, or other improper conduct sufficient to invalidate a will. In re Estate of Jaeger, 16 Ill.App.3d 872, 874, 307 N.E.2d 202 (1974). If the instrument contains an attestation clause that shows on its face that all of the formalities required by law have been met and the signatures on the instrument are admittedly genuine, a prima facie case has been made in favor of the due execution of the will. However, when the evidence clearly shows that the attestation clause does not speak the truth, the attestation clause alone cannot establish a prima facie case in favor of due execution. Jaeger, 16 Ill.App.3d at 875, 307 N.E.2d 202. A prima facie case of the validity of the will may be overcome by the positive testimony of the subscribing witnesses that one of the statutory requirements was not met. In re Estate of Thomas, 6 Ill.App.3d 70, 72, 284 N.E.2d 513 (1972).
Section 8-1(a) of the Act provides, among other things, that any interested person may file a petition to contest the admission of the will to probate within six months of its admission. 755 ILCS 5/8-1(a) (West 1996). Any party to the proceeding may demand a trial by jury, and the contestant shall in the first instance proceed with proof to establish the invalidity of the will; at the close of the contestant's case, the proponent may present evidence to sustain the will. An authenticated transcript of the testimony of any witness taken at the time of the hearing on the admission of the will to probate, or an affidavit of any witness received as evidence under section 6-4(b), is admissible as evidence. 755 ILCS 5/8-1(c) (West 1996).
Having reviewed the legal background for this type of proceeding, we now turn to the factual and legal issues presented by this appeal. At the initial hearing to admit the will to probate, Elba Franco testified on behalf of the proponents of the will. She identified a six-page document (the purported will) upon which she recognized her signature and the initials "LC." She stated that her initials appeared on each page of the document. She recalled Ramona Alcala coming into the office with an older lady (Tomasa Alfaro). She saw Alfaro sign the document and Alfaro seemed to know what she was doing.
The document was dated February 23, 1992, the date on which it was signed. Franco was called in to witness her signature. Lucy Copado was present during the signing of the will. Franco saw Copado place her initials on each sheet. Franco did not know Alfaro before that day and did not know if she spoke English. She did not hear her say anything that day. When asked whether an investigator asked her if Copado was present and signed the will, Franco said, "I told him most likely she was." According to Franco, Copado was there "because that's the way it usually ran in the office. Lucy Copado would be there." Franco did not remember the older lady (Alfaro) but did remember being a witness to the signature. Franco volunteered in the office to help Copado. She believed that it was Lucy Rios who prepared the will. Rios was not a lawyer.
Lucy Rios testified that she was self-employed in a secretarial service and also worked for the Lake County health department. She sometimes did translating and interpreting for the court and did income taxes and typing for several lawyers' offices. She identified the document in question that *624 was prepared by her office as the will of Tomasa Alfaro. Rios had known Alfaro's daughter Ramona for the past 15 years and knew the family well. Alfaro asked Rios to prepare the will. Rios had her daughter Lucy type it up. When they came to the office, Rios went over the will and Alfaro signed it. In court, Rios recognized her own signature on the last page of the document "as the notary to the document." Rios's initials also appeared on every page of the document.
Rios testified that Ramona (Alfaro's daughter), Tomasa Alfaro, Rios's daughter Lucy (Copado), Elba Franco, another daughter of Rios, and Janie were present in the office. Copado, Franco, and Rios signed the document and they saw Alfaro sign it. Rios saw Franco place her name and initials on the document and saw her sign her name as a witness to the document. Rios also saw Copado sign the document and place her initials on the left side of each page of the document. Alfaro was present when Franco and Copado signed the will. Alfaro appeared to know what she was doing when she signed the document.
Rios further testified that Alfaro understood the document; it was all translated into Spanish. When Alfaro came into the office on February 23, she had already told Rios what she wanted. Everything was done in Spanish, and then Rios translated into the English language. The day Alfaro came in, Rios read everything to her in Spanish. Rios read her the document and Alfaro agreed with it.
In court, Rios acknowledged that she was not a lawyer. Alfaro told her what she wanted in the will. Rios only spoke to Alfaro in Spanish. She never heard Alfaro speak English. Rios said she could write a will in Spanish. In this case, Rios translated the will into English. She did not write the will in Spanish. She explained to Alfaro the effect of giving all of the residue of her estate to her two daughters.
Fred Dudink testified as a document examiner and handwriting analyst. After examining the paper, the watermarks, and the typewriting font, he did not find any alterations in the document. He concluded after comparisons with other exemplars that the signature of Alfaro compared favorably with the standards he used. He also concluded that the same person who wrote the initials "LC" also wrote the name Lucy Copado. He would not testify, however, that the signature purporting to be that of Copado was actually that of Copado. On cross-examination, he stated he was prepared to testify that Copado's signature was a "disguised writing."
The contestants' counsel examined Diane Marsh, a forensic document examiner. After studying Copado's writing habits and comparing Copado's signature standards with the signature on the will, Marsh concluded that the signature attributed to her did not compare favorably with the signature on the will. She opined that someone attempted to duplicate Copado's signature on the will.
Rios was recalled to testify. She stated that Copado was her daughter and was one of the persons who witnessed the will. Rios had not spoken with her since August 1995 because of a dispute over financial matters.
The evidence deposition of Lucy Copado was admitted into evidence. In the deposition, Copado testified that she typed a document purporting to be the will of Alfaro. She was then working at Rios's secretarial service in Waukegan. Rios is her mother. Ramona Alcala, Alfaro's daughter, brought in a will to be typed. The writing was on a yellow legal pad, was in English, and had been given to Rios. Copado believed that the will was something that Alcala had brought in. She recalled that, on February 23, Alfaro, Alcala, and Rios were present. Copado signed a will that day in the presence of Rios and Alfaro. She did not remember Franco being present. Copado was certain that the signature on the will now before her was not her signature. She stated that her signature was forged. The initials were not hers either. She was not certain if Alfaro had signed the will earlier on the day in question. No one said to Copado, "This is Tomasa's will and she wants you to be a witness" or made any similar comment. Copado testified that this was the only will she had ever witnessed, and she did not know who would normally witness wills in her mother's office. Copado *625 worked in that office for about two years and typed the wills, formatting them on a computer.
Following the evidentiary hearing, Judge Trobe found that the signature of one attesting witness and of the notary were genuine and that there existed a prima facie case "favoring due execution" of the will. He concluded that there was a presumption of validity and admitted the will to probate in an order dated December 5, 1996. The judge did note, however, that there was no Illinois case directly addressing whether the signature of a notary may be treated as a signature of an attesting witness.
On April 11, 1997, the contestants filed a petition to contest the validity of the will (755 ILCS 5/8-1 (West 1996)). The contestants were children and heirs of the deceased who, under the will, would receive little by comparison to the proponents. Count I alleged, inter alia, fraud in the execution of the will and that the forged signature of Copado rendered the will a nullity. Count II alleged that the will written in English was invalid; that the proponents had the will prepared by Rios, a nonlawyer; and that Rios could not explain the meaning of the will to the decedent, who could not read or speak English to a proficient degree. Count III alleged various acts showing that proponents exerted undue influence over the decedent in having the will prepared and that the will was not that of the decedent. Count IV alleged, inter alia, that the will was not legally enforceable because of alleged legal errors in the drafting of the will by Rios and that certain gifts under the will would fail because of the manner in which the residuary clause was drafted.
The contestants later filed a motion for summary judgment arguing that the forgery of Copado's signature discredited the testimony of the attesting witness, Franco, and of the notary, Rios. The contestants also argued that Rios, acting as a notary public in authenticating the alleged signatures of the two attesting witnesses, could not be an attesting witness under Illinois law and that her testimony would only be admissible where the signatures of the attesting witnesses were "admittedly genuine."
In granting summary judgment to the contestants, Judge Radosevich found that there were two signatures (Elba Franco and Lucy Copado) which appeared as the signatures of attesting witnesses on the purported will of the deceased; that the signature of Lucy Copado as an attesting witness was forged; that Lucy Rios signed the will as a notary; that Rios did not sign the will as an attesting witness; that the affidavit in the will was not signed by Rios; and that the initials that appeared on the margin next to the affidavit did not act as an affirmation of said affidavit. As a result, the court determined that, since there was only one attesting witness to the will, the will could not be probated pursuant to section 6-4 of the Act (755 ILCS 5/6-4 (West 1996)). Having determined that there was only one attesting witness and the will was therefore invalid, the court specifically did not reach the issue of the credibility of the attesting witness, Franco, and the notary, Rios.
In opposing the entry of summary judgment, the proponents have maintained both here and in the trial court that there were triable factual issues regarding whether the attesting witness Franco and the notary Rios were discredited; whether Rios was acting as an attesting witness; and whether the forgery affected the validity of the will. The proponents argued that more evidence should be considered. Alternatively, on appeal the proponents argue that Rios's testimony should stand to show that she was acting as an attesting witness and that this court should determine as a matter of law that Rios's signature made the will valid. The contestants appear to argue that there are no triable issues of fact; that the notary cannot act as an attesting witness; and that the notarial certificate could not be deemed a signature of an attesting witness.
We agree that summary judgment should not have been entered in this case where there are, at the very least, disputed issues of material fact regarding the genuineness, intent, and legal efficacy of the signatures. Even if it were assumed arguendo that Franco's signature was valid, there remains a disputed factual and legal question whether the notary could act as an attesting *626 witness under the circumstances. It is contestants' position that the status of the notary is merely a question of law. However, contestants concede in their brief that "a notary may act as an attesting witness when signing as an attesting witness," and then they state that the "real question is why a signature of a notary verifying a signature which is found to be forged should be given any credence." (Bold in original.) Similarly, there is a controverted issue of material fact whether the signature of Copado was forged.
It is significant that there are important questions of credibility that have not been addressed by either of the judges that heard this case. It would be difficult, if not impossible, for this court to sustain what appear to be the factual findings of a trial court that declined to consider the credibility of the witnesses where the testimony regarding what happened at the signing of the will is conflicting. Summary judgment was entered on the basis of a cold record which contained conflicting versions regarding the execution of the will. A credibility determination and a weighing of the evidence would appear necessary to sustain the factual findings of the court in this case; however, such determinations are generally improper in a summary judgment proceeding. Schulenburg v. Rexnord, Inc., 254 Ill.App.3d 445, 450, 193 Ill.Dec. 857, 627 N.E.2d 16 (1993).
When there is no ambiguity in the language of a document requiring the admission of extrinsic evidence, summary judgment may be a proper procedure to construe the language and determine the validity of the document. See Giannetti v. Angiuli, 263 Ill.App.3d 305, 312-13, 200 Ill.Dec. 744, 635 N.E.2d 1083 (1994). However, where as here parties seek to draw different inferences on questions of intent from the same document and have introduced conflicting extrinsic evidence to demonstrate the intent and validity of the signatures, summary judgment is particularly inappropriate. See Giannetti, 263 Ill.App.3d at 313, 200 Ill.Dec. 744, 635 N.E.2d 1083. A court cannot decide factual disputes as a matter of law and should grant a motion for summary judgment as a matter of law only when the right of the moving party is clear and free from doubt. Gatlin v. Ruder, 137 Ill.2d 284, 293-94, 148 Ill.Dec. 188, 560 N.E.2d 586 (1990).
Even where the facts are undisputed, if fair-minded persons could draw different inferences from those facts, then a triable issue of fact exists and summary judgment is inappropriate. In re Estate of Ariola, 69 Ill.App.3d 158, 167, 25 Ill.Dec. 388, 386 N.E.2d 862 (1979). Different trial judges in the same proceedings appear to have arrived at different conclusions regarding the effectiveness of the notary's signature. Judge Trobe did not make any credibility findings nor did he make a specific ruling that Copado's signature was forged. However, Judge Radosevich apparently concluded from a cold record containing conflicting testimony that Copado's signature was a forgery. We cannot say that the right to summary judgment is free from doubt. See National Boulevard Bank v. Georgetown Life Insurance Co., 129 Ill.App.3d 73, 88, 84 Ill.Dec. 330, 472 N.E.2d 80 (1984).
We conclude that summary judgment was inappropriate in this case, and the cause must be remanded for a further evidentiary hearing. A question of law remains to be decided by this court since it will likely be considered on remand. The case law of Illinois is unclear regarding whether a notary public may act as an attesting witness to a will. However, we see no reason why a notary cannot act in that capacity under the appropriate circumstances. The legal efficacy of a notary's signature as an attesting witness to a will of course depends on the particular facts of the case and must be shown by sufficient extrinsic evidence when it is not clear from the face of the instrument itself.
We adhere to the initial guiding principle that "[o]ne who signs his name to a will is not an attesting witness unless he signs with that intention and not for some other purpose." Williams v. Springfield Marine Bank, 131 Ill.App.3d 417, 421, 86 Ill.Dec. 743, 475 N.E.2d 1122 (1985). It is essential to the effectiveness of the person's attestation that he act with the intent to attest the instrument, and he must sign with *627 the intention of performing the act necessary to become a witness to the execution of the instrument. This intent is manifested by the circumstances under which the witness signs, and they are determinative. See 79 Am. Jur.2d Wills § 267 (1975). Where the statute requires witnesses to "attest" a will, they must sign their names thereto as witnesses, in addition to perceiving the acts necessary to the legal execution of the will. In re Estate of Lum, 298 Ill.App.3d 791, 794, 232 Ill.Dec. 864, 699 N.E.2d 1049 (1998). Those acts necessary to the legal execution of the will are clearly stated in section 6-4 of the Act. 755 ILCS 5/6-4 (West 1996).
By contrast, when one acts strictly in his capacity as a notary public, such as by notarizing the witnesses' signatures on a will, the act of notarization tends to prove the authenticity of the witnesses' signatures and the verification of the attestation clause. A notary public is an official who is authorized by the state or federal government to administer oaths and to attest to the authenticity of signatures. In re Estate of Koziol, 236 Ill. App.3d 478, 483, 177 Ill.Dec. 279, 603 N.E.2d 60 (1992); see 5 ILCS 312/6-101(a) (West 1996) (notarial acts include "taking an acknowledgment, administering an oath or affirmation, taking a verification upon oath or affirmation, and witnessing or attesting a signature").
There is authority from other jurisdictions "that an officer authorized to take acknowledgments under oath, such as a justice of the peace or a notary public, may properly be considered to have attested a will, although his signature appears in the form of an official certificate of acknowledgment, provided that he was requested to attest the instrument, intended to act as a witness, and added the certificate in the belief that it would give greater efficacy to his attestation." 79 Am.Jur.2d Wills § 268 (1975); see In re Hull's Will, 117 Iowa 738, 740-44, 89 N.W. 979, 980-81 (1902); In re Estate of Price, 73 Wash.App. 745, 752, 871 P.2d 1079, 1083 (1994). Where the circumstances show that the notary was in fact acting as an attesting witness, the notary's certificate may be regarded as superfluous. See 79 Am.Jur.2d Wills § 268 (1975); see also In re Ryan's Will, 12 Misc.2d 192, 174 N.Y.S.2d 607, 608 (Sur.Ct.1958). However, where the character in which a person signs a will appears not to be that of a witness but of a notary public purporting to take an oath, his signing is not effective as an attesting witness. In re Hammer's Estate, 72 N.Y.S.2d 636, 637 (Sur.Ct.1946).
When it is contended that a notary's signature ought to be deemed the subscribing signature of a required attesting witness, the question to be determined is whether the notary was attesting merely to the genuineness of a signature or signatures and was therefore acting only in the capacity of a notary or whether the notary was attesting to all of the acts required by the statute that comprise the proper execution of the will and he was therefore acting as an attesting witness. See Ryan's Will, 174 N.Y.S.2d at 609. We hold that a notary's signature may be deemed the signature of an attesting witness so long as all of the legal requirements of a valid attestation were nonetheless complied with when the notary affixed his signature. Price, 73 Wash.App. at 752-753, 871 P.2d at 1083. However, the notary's certificate and signature cannot serve both as an attestation and a notarial certificate at once. Price, 73 Wash.App. at 753 n. 4, 871 P.2d at 1083 n. 4.
In the case before us, neither of the two judges made credibility determinations. We believe an evidentiary hearing was in order in the will contest where the facts concerning the execution of the will were in dispute and extrinsic evidence from the proceeding to admit the will tended to show that a forgery had been committed in attesting the testator's signature. Because there was conflicting evidence and the veracity of the witnesses was in question, the court should have made findings of fact and determinations of credibility in resolving whether the will was properly executed and attestedparticularly with respect to Copado's signature. The judge who entered summary judgment was not in a position to determine the credibility of the witnesses regarding Copado's contested signature.
*628 Accordingly, we reverse the judgment and remand the cause for further evidentiary proceedings and for the court to enter the findings of fact and conclusions of law it deems appropriate. The court may take into consideration the effect, if any, of any evidence of fraud, forgery, or other misconduct in determining the efficacy of the notary's signature and the validity of the will. It could very well be that the result will be the same on remand. Arguably, there is no ambiguity on the face of the instrument with respect to Rios's signature as a notary public. However, we are not in any position to affirm the judgment, given the procedural posture of this case, the uncertainty of the law at the time judgment was entered, and the state of the record now before us.
The judgment of the circuit court of Lake County is reversed, and the cause is remanded for further proceedings.
Reversed and remanded.
HUTCHINSON and RAPP, JJ., concur.