2019 IL App (2d) 180782-U
No. 2-18-0782
Order filed December 23, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF RICHARD P. LIBBY, Deceased | ) ) ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| | | No. 18-P-164 |
| | | Honorable |
| (Lauren Jackson, Petitioner-Appellant v. Julie Zamudio, Executor, Respondent-Appellee.) | ) ) | Donna-Jo R. Voderstrasse, Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Jorgensen and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in confirming the admission to probate of decedent's will; the attestation clause contained in the will was shown to be statutorily sufficient.

¶ 2    Petitioner, Lauren Jackson, appeals from the trial court's order confirming the admittance to probate of the will of Richard P. Libby, deceased.  We affirm.

¶ 3                                         I. BACKGROUND

¶ 4    Richard P. Libby died on January 20, 2018.  Respondent, Julie Zamudio, one of Libby's daughters and an heir and legatee, filed a petition seeking to admit Libby's purported will, dated February 26, 2018, to probate and for the issuance of letters testamentary.  On April 9, 2018, the trial court admitted the will to probate and issued letters testamentary to Zamudio as independent

executor. The court declared the only heirs (and their percentages of the distribution of Libby's residence and accounts) to be Libby's daughters Zamudio (33%), Jackson (5%), Wendy Schultz (27%), Valerie Mantos (15%), and Leslie Libby (15%), and a granddaughter, Leigh Anne Libby (5%).

¶ 5     On April 30, 2018, Jackson filed a petition for formal proof of the will pursuant to section 6-21 of the Probate Act of 1975 (Act) (755 ILCS 5/6-21 (West 2016). Hearing on this petition was held on July 24. The Estate first presented the testimony of Ranae Hansen, vice president of operations at Pine Tree Commercial Realty, LLC, who testified that she signed as a witness to Libby's will. Above the witness signature lines, the will provided:

> "We, the witnesses, sign our names to this document and declare that the testator willingly signed and executed this document as the testator's last will. In the presence of the testator and in the presence of each other, we sign this will as witness to the testator signing. To the best of our knowledge, the testator is age of majority or otherwise legally empowered to make a will. He is of sound mind and is under no constraint or undue influence. We declare under penalty of perjury that the forgoing is true and correct this 26th day of February 2016 at Northbrook, Illinois."

Hansen also identified the signatures of Jennifer Costa and Kerri S. Wallace, Pine Tree employees that signed as witness and notary, respectively.

¶ 6     Hansen met Libby on February 26, 2017, when Zamudio, who was a Pine Tree employee at the time, brought him to the office. She described Libby as "a thin, taller gentleman, very friendly." Hansen had a "slight conversation" with him. She saw Libby sign the will, and she and Costa signed the will as witnesses in Libby's presence. Zamudio and Wallace were also present.

¶ 7        Hansen had never met Libby before that day; she was unsure what he wore, and did not remember anything unique about his appearance or his actions.  She was in the room with him for five to seven minutes.  Their conversation entailed mainly introductions and Libby's statement that he couldn't hear very well.  Libby "seemed to know what was going on, what he was there for."  She could not recall if Libby had initialed each page of the will before he signed it or after.

¶ 8        Hansen believed that Libby was of sound mind, meaning that "he's cognizant of making decisions and knows what he is doing at that moment."  She based this belief on the fact that he made it to their office from his residence, which was "a distance" away; however, she did not know how Libby actually got to the office, and she had merely guessed that he had driven himself.  She also believed that Libby was not under any undue influence, which she described as nobody trying to force him beyond his capabilities to do something that he did not want to do.  Libby seemed "to be able to talk and walk and answer questions and he seemed very relaxed and very cordial."

¶ 9        Jennifer Costa testified that she recognized her signature as well as those of Hansen and Wallace on Libby's will.  The three of them were Zamudio's coworkers on February 26, 2016.  Zamudio introduced her to Libby on that date.  She spoke to Libby about the Chicago Cubs because he was wearing a Cubs cap; however, he did not say anything, and just stared at her; Zamudio told Costa that Libby was deaf and would not hear anything that she said.  She had no other conversations or interactions with Libby.

¶ 10      Costa remembered that she witnessed the will in Zamudio's office but could not recall where within the office.  She did not remember the actual signing, including who else was in the room, what time of day the signing took place, or any other conversations in the room.  She could not recall Libby actually signing the will or being present when he did so.  She did not doubt that Libby signed the will in front of her, but she did not recall it.  When asked if the will shown to her

was in the same condition as when the signatures were placed on it, she did not "remember the document enough to say it's exactly the same," but her signature was on it and she had no doubt that she signed the document as a witness.

¶ 11    Zamudio testified that Libby drove himself to her office on February 26, 2016 in order to execute his will. She was present in her office, along with Hansen, Costa, and Wallace when Libby signed the will. Hansen and Costa signed as witnesses in Libby's presence, and Wallace notarized the signatures. The only conversation that she could specifically remember was between Costa and Libby regarding the Cubs; when Libby did not respond to Costa, Zamudio told Costa that Libby was "really hard of hearing." Libby had drafted his will at home, using a computer program.

¶ 12    After hearing argument, the trial court continued the cause for briefing and for ruling until August 23. On that date, the trial court confirmed the admittance to probate. In its oral ruling, the trial court explained:

> "The Court's concerns were twofold; the attestation clause signed by the two witnesses did not use the typical statutory language and, second, the limited testimony of the witnesses on the element of sound mind and memory.
>
> The attestation clause in this will reads: To the best of our knowledge, the testator is of the age of majority or otherwise legally empowered to make a will, is of sound mind, and is under no constraint or undue influence.
>
> It did not use the statutory language that the witness believed the testator to be of sound mind and memory at the time of the signing.
>
> Petitioner argues that the attestation clause does not meet the statutory requirement because it does not include the word belief or the word memory, and, therefore, if that was true, no prima facie case would be made and no presumption would be indulged in favor

of the execution and attestation of the will. Without that presumption, the testimony would be of grave consequence as stated by the Petitioner."

¶ 13 The trial court found that Costa was "credible but had very weak testimony on the statutory factors." Hansen was also credible and had "stronger testimony, especially regarding the statutory factors." After reviewing the attestation clause of the will, the trial court concluded that the clause "does satisfy the requirements of the statute" and that "[t]he proponent of the will has established the will by sufficient competent evidence, and the will stands as admitted to Probate. Therefore, the original order admitting the will to Probate and the original order appointing representative is confirmed."

¶ 14 This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16 Jackson now contends that the trial court erred in admitting the will to probate and later confirming the admission, as neither the attestation clause of the will nor the in-court testimony of the witnesses was sufficient. The requirements for the admission of a will to probate are provided in section 6-4 of the Act (755 ILCS 5/6-4 (West 2016)). Our review of whether the attestation clause meets the statutory requirements of the Act is *de novo*. See *In re Estate of Poole*, 207 Ill 2d 393, 401 (2003). Our review of the trial court's decision in light of the witnesses' testimony at hearing involves the standard of against the manifest weight of the evidence. See *In re Estate of Carroll*, 192 Ill. App. 3d 202, 208 (1989).

¶ 17 The admission of a will to probate requires only a *prima facie* showing of the validity of the will. *In re Estate of Alfaro*, 301 Ill. App. 3d 500, 503 (1998). Section 6-4 of the Act requires the attestation of two witnesses to the will stating:

"(1) he was present and saw the testator or some person in his presence and by his direction sign the will in the presence of the witness or the testator acknowledged it to the witness as his act, (2) the will was attested by the witness in the presence of the testator and (3) he believed the testator to be of sound mind and memory at the time of signing or acknowledging the will." 755 ILCS 5/6-4(a) (West 2016).

The attestation may be made through in-court testimony, an attestation clause signed by the witness and forming a part of or attachment to the will, or through an affidavit. 755 ILCS 5/6-4(b) (West 2016). If the will contains an attestation clause that shows on its face that all of the formalities required by law have been met and that the signatures on the instrument are admittedly genuine, a *prima facie* case has been made. *Alfaro*, 301 Ill. App. 3d at 504. If the evidence clearly shows that the attestation clause does not speak the truth, the attestation clause cannot alone establish a *prima facie* case in favor of execution. *Id*. Further, a *prima facie* case of the validity of the will may be overcome by positive testimony of the subscribing witnesses that one of the statutory requirements was not met. *Id*.

¶ 18    Jackson first contends that the attestation clause here does not satisfy section 6-4 of the Act. Jackson correctly notes that section 6-4(a) of the Act requires that the witnesses attest that they "*believed* the testator to be of sound mind and memory at the time of signing or acknowledging the will." (Emphasis added.) However, the attestation at issue here provided that, "*To the best of our knowledge*, the testator is age of majority or otherwise legally empowered to make a will. He is of sound mind and is under no constraint or undue influence." (Emphasis added.) Jackson asserts that the phrase "To the best of our knowledge" is not equivalent to the plain and ordinary meaning of "believed" such that the attestation clause cannot be the basis for a *prima facie* case**.** According to Jackson, a belief in the fact attested to requires a level of

commitment to the existence of the fact that simply is not met by an attestation made "to the best of our knowledge."

¶ 19     We first note that the Act does not require the exact recitation of the statutory language in an attestation clause.  To require such a rote, mechanical requirement would violate the legislative intent behind the Act.  The Act is designed to provide a method whereby the administration of an estate can be commenced quickly yet permit interested parties adequate opportunity to test the validity of a will.  *In re Estate of Kvasauskas*, 5 Ill. App. 3d 202, 204 (1972).  The Act is to be "liberally construed to the end that controversies and the rights of the parties may be speedily and finally determined and the rule that statutes in derogation of the common law shall be strictly construed does not apply."  755 ILCS 5/1-9 (West 2016).  Further, "the law favors admission of a will to probate."  (Internal quotation marks omitted.)  *Estate of Tassarus v. Michas*, 404 Ill. App. 3d 825, 828 (2010).

¶ 20     Looking to Merriam-Webster On-Line Dictionary, Jackson argues that "belief" requires a "personal acceptance of the truth of the proposition at issue" that is lacking from the phrase "to the best of our knowledge."   The online dictionary provides multiple definitions of believe, including "to consider to be true or honest," "to accept the word or evidence of," "to hold as an opinion: SUPPOSE," and "to accept something as true, genuine, or real," and "to hold an opinion: THINK."   See https://www.merriam-webster.com/dictionary/believe#other-words (last viewed 10/04/2019).  The phrase "to the best of one's knowledge" is defined as "used to say that a person thinks something is true but that there may be something he or she does not know which makes it untrue"  and  "as  truthfully  as  possible."    See  https://www.merriam-webster. com/ dictionary/to%20the%20best%20of%20one's%20knowledge (last viewed 10/04/2019).

¶ 21    We do not find such a variance between the two concepts that the attestation clause at issue here would fall short of the requirements of section 6-4(a).  The Act does not, indeed cannot, require certitude on the part of the witness.  Both "believe" and "to the best of one's knowledge" involve a similar amount of uncertainty: to consider, to accept, to suppose, to think, to hold as an opinion ("believe") versus to think or to be as truthful as possible ("to the best of one's knowledge").  Neither is purely objective, both are subjective.  Neither can do what Jackson claims is the purpose of the Act—"to ensure that the Trial Court knows with certainty an individual's last will is truly his last will and last wishes for the disposition of his estate."  However, both can provide what is required at this stage of the proceedings—a *prima facie* showing of the validity of the will.  See *In re Estate of Alfaro*, 301 Ill. App. 3d at 503.  Certainly, use of the statutory language in the attestation clause would be the best practice.  However, we cannot conclude, especially in light of the legislative intent behind the Act, that the attestation clause here was insufficient to satisfy section 6-4 of the Act and make a *prima facie* showing of the validity of the will.

¶ 22    Jackson next argues that the attestation clause was inadequate because it did not state that the witnesses saw the decedent sign the will.  Zamudio points out that Jackson never raised this issue in the trial court.  Our review of the record on appeal confirms that Jackson did not raise this issue in either her oral arguments or her brief opposing confirmation, and she does not address her failure in her reply brief.  Issues not raised in the trial court are forfeited and cannot be raised for the first time on appeal.  *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15.  Thus, we will not consider this issue.

¶ 23    The attestation clause in this case was sufficient on its own to establish a *prima facie* case of proof of the execution of the will.  While Jackson attacks the adequacy of the testimony presented at the hearing, she does so only in the context of the adequacy of the testimony if the

attestation clause was found to be invalid. She does not argue that the testimony undermined the adequacy of the attestation clause or showed that the clause "does not speak the truth." See *Alfaro*, 301 Ill. App. 3d at 504. Thus, as we have found the attestation clause to be sufficient, we need not address Jackson's contentions regarding the testimony.

¶ 24 Because we have found the attestation clause to be statutorily sufficient, we can find no error in the trial court's confirmation of the admission of the will to probate.

¶ 25                                III. CONCLUSION

¶ 26 For these reasons, the order of the circuit court of Lake County is affirmed.

¶ 27 Affirmed.